IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL ANDERSEN,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, et al.<br>    Defendants. | Case No. 16 C 1963<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

  Defendant Chicago Police Officers (collectively "Defendant Officers") have moved to compel non-party Illinois Prisoner Review Board (the "Board") to comply with a subpoena for records and to produce documents it withheld based on various objections. For the reasons that follow, Defendants' motion [288] is granted in part, but denied in part only as to the handwritten notes discussed below. The Board shall comply with this Memorandum Opinion and Order by 2/18/2019.

## BACKGROUND

  In March of 1982, Plaintiff Daniel Andersen ("Andersen) was tried and convicted of the 1980 murder and attempted rape of Cathy Trunko ("Trunko"). Andersen was sentenced to forty years for murder and a concurrent thirty-year sentence for attempted rape, plus a fifteen-year enhancement for "exceptionally brutal or heinous behavior, indicative of wanton cruelty." (Doc. 1. at ¶ 95). In the early 1990s, Andersen filed two Executive Clemency Petitions seeking to commute his prison sentences, which were both denied. Andersen was released from custody in 2007, having spent more than twenty-seven years in prison for the murder and attempted rape of Trunko. In 2014, DNA testing exonerated Andersen of the crimes by showing that the type of blood found on the alleged murder weapon belonged to neither Andersen nor Trunko. Thereafter, in 2015, the Circuit Court of Cook County vacated Andersen's conviction. The State dismissed the charges and did not oppose his petition for a Certificate of Innocence, which was granted on December 18, 2015. In this lawsuit, Andersen asserts that he is innocent of the crimes for which he was convicted. He has sued the City of Chicago ("City") and various individual Defendant Police Officers for wrongful arrest, prosecution and conviction, alleging among other things that Defendant Officers coerced him into giving a false confession, fabricated evidence that was used against him, and destroyed exculpatory evidence. Andersen also brings a *Monell* claim alleging that the Defendant Officers' misconduct occurred as part of a larger pattern of unconstitutional practices within the City. The *Monell* claim against the City has been bifurcated and discovery is stayed on Andersen's *Monell* claim. (Doc. 90).

On September 14, 2016, Defendant Officers issued a subpoena to the Board seeking all records relating to any clemency petitions and clemency proceedings for Andersen. In response to the subpoena, the Board withheld four categories of documents: (1) Andersen's mental health psychiatric/psychological records; (2) law enforcement criminal records of Andersen; (3) internal recommendations of the Board to the Governor as to whether the Clemency Petitions should be granted or denied ("Resumes and Recommendations"); and (4) victim impact letters which relatives and friends of Cathy Trunko submitted in response to the Clemency Petitions upon request by the Board. Defendant Officers' motion to compel seeks production of these documents withheld by the Board. Plaintiff has not taken a position on Defendant Officers' renewed motion.

## DISCUSSION

The Board raised several objections to the Defendants Officers' subpoena for Andersen's clemency records. The threshold objection raised by the Board is the relevance of the withheld records. The Board argues that none of the withheld records have any relevance to Andersen's underlying lawsuit for an alleged wrongful arrest in 1980 and conviction in 1982. Defendant Officers claim generally that all facts and information the Board learned in the process of Andersen's incarceration is relevant to their defense of this action. The Board also raises a deliberative process privilege objection in connection with certain withheld documents.

Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008); *see also* Advisory Committee Notes regarding 1991 Amendments to Rule 45(a)(2) (stating "non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

As to privilege, Rule 45(d)(3)(A) requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). Federal common law governs any privilege determination in this federal question suit brought pursuant to 42 U.S.C. § 1983 for wrongful arrest, prosecution, and conviction even though the complaint contains supplemental state law claims. *See* Fed. R. Evid. 501; *see also Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981); *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) (confirming that Illinois privilege law does not govern in federal-question suits).

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). It "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dept. of Interior v. Klamath Waters Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (internal citations and quotations marks omitted). The deliberative process privilege is designed to protect frank discussion of legal and policy matters that are essential to the decisionmaking process of a governmental agency. *Farley*, 11 F.3d at 1389. For the deliberative process privilege to apply,

the withheld material must be both "pre-decisional" and "deliberative." *Enviro Tech Intern., Inc. v. U.S. E.P.A*, 371 F.3d 370, 375 (7th Cir. 2004) (stating "in order to qualify for the privilege, a document must be both predecisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy,' and deliberative in the sense that it is 'actually . . . related to the process by which policies are formulated.'").

### A. Mental Health Records

As to the first category of withheld documents, the Court finds that the psychological evaluations of Andersen during his incarceration (PRB 12, 13, 14-16) are clearly relevant to his claim for emotional damages. Andersen alleges serious mental anguish and emotional pain and suffering as a result of the Defendant Officers' alleged misconduct. Recognizing that he has put his mental health at issue, the Court understands that Andersen has waived any confidentiality objections to the production of his mental health records. The Board states that it will provide these records if it receives consent from Andersen which meets the requirements of the Health Insurance Portability and Accountability Act ("HIPAA") and the Illinois Mental Health and Developmental Disabilities Confidentiality Act. Defendant Officers' counsel indicates that he contacted Plaintiff's counsel about this issue. If production of these documents has not already begun, the Board is ordered to produce these records within 14 days of receiving Plaintiff's consent.

### B. Criminal History Records

The Board argues that Andersen's criminal history records, the second category of withheld documents, do not contain any relevant information other than the fact that Andersen was convicted of the murder and attempted rape of Trunko, and that fact is certainly not at issue. However, Defendant Officers need not take the Board's word. Defendant Officers are entitled to review the documents themselves and come to their own conclusions so long as production is warranted under the relevance and proportionality standards in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1). Moreover, as a general rule, criminal history may be used to impeach a witness's credibility – in this case, Andersen, pursuant to Federal Rule of Evidence 609. By its terms, the federal statute cited by the Board, 34 U.S.C. § 10231, does not prevent the dissemination of the criminal record produced by the FBI (PRB 1) from disclosure in this case because Andersen's criminal history information is not "research or statistical information," discovery in a civil proceeding is a "lawful purpose," and disclosure here will not violate Andersen's privacy and constitutional rights. *See* 34 U.S.C. § 10231 (a), (b), (c). In any event, the criminal history documents will be subjected to the Court's Confidentiality Order in this case. Finally, the state statute, 20 ILCS 2630/7, and regulations relied on by the Board do not govern discoverability of the document from the Law Enforcement Agencies Data System of the Illinois State Police (PRB 34-38) in this federal question case. As a result, the Court concludes that Andersen's criminal history records are relevant and discoverable in this civil rights action. The Board's objection in this regard is overruled.

**C.     Resumes and Recommendations from the Board to the Governor**

The third category of withheld documents concerns the Board's "Resumes and Recommendations" to the Governor as to whether Andersen's Clemency Petitions filed in 1991 and 1993 (PRB 31-33, 39-43) should be granted or denied.  Magistrate Judge Valdez, the predecessor magistrate judge in this case, ordered the Board to provide the Resumes and Recommendations for an *in-camera* review.  This Court has received and reviewed those documents *in camera*.  As to relevance, the Board concedes that these documents provide a "historical narrative of the murder of Cathy Trunko," which is clearly relevant in this case.  The Board argues, however, that the Resumes and Recommendation "do not provide anything new" and a "summary of events that all parties are already aware of will not provide any probative value." (Doc. 299 at 7, 8).

Courts have discretion to limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Although there may be some overlap between the Resumes and Recommendations and what the parties already know, the Court cannot say from a discovery perspective that the information contained in the Resumes and Recommendations is entirely cumulative or duplicative of prior material.  Given the importance of the issues at stake in this litigation in this wrongful conviction and incarceration lawsuit, the Resumes and Recommendations could reveal information that could be useful and relevant to Defendant Officers' defense.  The Board's relevancy objection is therefore overruled as it relates to the Resumes and Recommendations.

The Board asserts two additional bases for withholding the Resumes and Recommendations: (1) the confidentiality provision found in section 3-3-13(c) of the Illinois Unified Code of Corrections, 730 ILCS 5/3-3-13(c), and (2) the deliberative process privilege.  These objections fail.

First, Section 5/3-3-13(c) states that where the Board has provided a hearing on a clemency petition, the Board "shall confidentially advise the Governor by written report of its recommendations which shall be determined by majority vote." 730 ILCS 5/3-3-13(c).  Federal common law, not state statutory law, applies to privilege matters here where the claims are based primarily on federal law.  *Northwestern Mem. Hosp.*, 362 F.3d at 925; *Mem. Hosp. for McHenry Cnty.*, 664 F.2d at 1061.  Recognizing that state law is not a bar to disclosure in a federal court proceeding based on federal law, the Board further asserts that the Resumes and Recommendations should be withheld on the basis of the confidentiality provision found in Section 5/3-3-13(c) because a "strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial costs to federal substantive and procedural policy."  *Memorial Hosp. for McHenry Cnty.*, 664 F.2d at 1061 (internal citations and quotations omitted).  The fundamental problem with this argument is that Illinois has not recognized an evidentiary privilege for the Board's clemency recommendations to the Governor.  *Valbruna Slater Steel Corp. v. Joslyn Mfg Co. LLC*, 2015 WL 6695510, at *5 (S.D. Ind. Nov. 3, 2015) (stating "if a state does not recognize the privilege and does not afford its own agencies that protection, then comity does not impel a federal court to apply the privilege in federal-question cases, and there is no evident independent federal interest or purpose that is served

in doing so."). Even if Illinois statutory law applied, Section 5/3-3-13(c) does not provide that the Board's Resumes and Recommendations are subject to a privilege. *Evans v. City of Chicago*, 231 F.R.D. 302, 319 (2005). The Board has not cited, and the Court has not found, any authority indicating that the term "confidential" as used in the state statute rises to the level of a privilege. *Evans*, 231 F.R.D. at 319. "At most, [Section 5/3/3-13(c)] created an obligation of confidentiality in the [Board]—an obligation that is not at odds with relevant production requests in discovery, so long as a protective order is in place, as it is here." *Id*. Accordingly, the Board may not use Section 5/3-3-13(c) to withhold relevant information in this case.[1]

Next, the Board asserts that the Findings and Recommendations sections of the Resumes and Recommendations are protected from disclosure by the deliberative process privilege. Other judges in this district have considered this precise issue of whether the Board's clemency recommendations to the Governor are protected from disclosure by the deliberate process privilege. In *Evans*, 231 F.R.D. at 318-19, a pardoned former inmate brought a federal civil rights action with supplemental state law claims relating to defendants' alleged conspiracy to frame him for a murder he did not commit. In an effort to obtain documents utilized in the pardon decision, the police officer defendants served a subpoena on the Board seeking all documents regarding or relating to Evans. *Id*. at 308. The Board withheld from its production its clemency petition files and recommendations that it had provided to the Governor for his consideration in connection with Evans' pardon. *Id*. The Court held that the Board's Recommendation memorandum that included Evans' petition for clemency was not protected by the deliberative process privilege. The *Evans* court noted that the Recommendation memorandum contained only factual information considered by the Board and the final Board decision. *Id*. at 319. The Recommendation memorandum did not contain any deliberations or thoughts by any Board members. *Id*. The *Evans* court concluded that the Recommendation memorandum was not protected by the deliberative process privilege because it "reflect[ed] a post-decision proclamation of what the decision was, and what it was based on." *Id*; *see also Howard v. City of Chicago*, 2006 WL 2331096, at *4-5 (N.D. Ill. Aug. 10, 2006) (holding that the Findings and Recommendation paragraph which contained the Board's pardon recommendation to the Governor was post-decisional and therefore not protected by the deliberative process privilege). *Evans* is persuasive. Just as the Recommendation memorandum in *Evans*, the Resumes and Recommendations at issue in this case reflect the Board's final decision on Andersen's Clemency Petitions and the basis of those decisions. *See* Decl. of Craig Findley, Doc. 299-2 at ¶ 10 (current chairman of the Board confirming that the Resumes and Recommendations "constitute the final recommendation of the PRB on Clemency."). Thus, the Resumes and Recommendations are post-decisional and not protected from disclosure by the deliberative process privilege.

---

[1] Similarly, the Board's assertion that the IDOC Supplementary Program Considerations and Disciplinary Sheet (PRB 3-6), IDOC Executive Clemency Evaluation and Progress Report and Disciplinary Sheet (PRB 7-11), and a portion of a memorandum written by the Assistant State's Attorney who prosecuted Andersen (PRB 44) are protected from disclosure under 730 ILCS 5/3-3-13(c) is an insufficient justification to withhold production of these documents. The Board additionally objects to production of PRB 3-6 and 7-11 on relevancy grounds. These documents contain an evaluation of Andersen's "adjustment to life within the institution," which is relevant to Andersen's claim for emotional distress damages. (Doc. 299-1 at 2). The Board's relevancy objection to PRB 3-6 and 7-11 is therefore overruled.

The Board argues that the Resumes and Recommendations should not be considered post-decisional because the final decision as to whether clemency is proper rests solely and exclusively with the Governor. The Court rejects this argument. Adopting the Board's reasoning would prevent a wide swath of potentially relevant documents from becoming discoverable in federal civil actions. A large number government agencies in Illinois internally deliberate before providing their recommendations to the Governor. While the agencies' internal deliberations could be subject to the privilege, once those final decisions are made and tendered to the Governor, the Board's deliberations are over. It is irrelevant that the Governor makes the final decision on clemency petitions – agencies often lack power to make the final decision without executive action. That does not change the fact that the agency's internal decision-making process has been completed. In summary, the privilege is recognized in order to ensure full and frank discussion before an agency decision is tendered. That principle is still being recognized and upheld in this case, as with certain handwritten notes discussed below, but the privilege properly terminates once the agency's final recommendation is reached, as it did with the issuance of the Board's Resumes and Recommendations document.

Accordingly, with the exception of the majority of the handwritten portion of PRB 39, the Court concludes that the Resumes and Recommendations are not protected by the deliberative process privilege and are discoverable. The handwritten notes on the bottom right of PRB 39 which reflect the final vote tally and proclamation of the final decision of the Board are not pre-decisional and are also discoverable. The remainder of the handwritten portion of PRB 39 is protected from discovery by the deliberative process privilege because it appears to reflect pre-decisional, deliberative information about whether Andersen should be awarded clemency. Finally, the Resumes and Recommendations disclosure will be subject to the Confidentiality Order entered in this case [79]. *See* 730 ILCS 5/3-3-13(c).

**D.     Victim Impact Letters**

The final category of withheld documents is the victim impact letters from Trunko's relatives and friends submitted in response to a request by the Board (PRB 17-30, 45-49). The Board asserts that these letters have nothing to do with Andersen's underlying civil rights action. According to the Board, the victim impact letters submitted at the clemency stage "discuss the adverse impact the murder had on the loved ones of Cathy Trunko, and plead for denial of the Clemency Petitions." (Doc. 299 at 3). The Board also represents that the victim impact letters "make no mention of the investigation and prosecution of Plaintiff." (*Id*. at 3-4).

With respect to relevancy, the Defendant Officers explain that most of Trunko's relatives, including her mother, father, older brother, and sister, are deceased and therefore were unable to sit for a deposition in this matter. Trunko's brother Carl Trunko is most likely her only living next of kin and he did sit for a deposition in this case. Many of Trunko's friends (Diane Diaz, Drew Froeter, Diane Mottier, and Mary Gladkowski) were also deposed in this matter and provided testimony about their observations and/or interactions with Andersen immediately before and after Trunko's murder, their relationship with Trunko and/or Andersen, and their knowledge of Andersen's relationship with Trunko. Defendant Officers state that Andersen's whereabouts leading up to, during and after the murder of Trunko as well as his relationship with Trunko before her murder is hotly disputed in this case. Defendant Officers argue that the victim impact

6

statements may shed some light on these disputed issues and may have impeachment value at trial. If deceased family members who were unavailable to sit for a deposition in this case provided the Board with victim impact letters, Defendant Officers point out that they have no other way of obtaining the information contained in the letters.

Defendant Officers' relevancy arguments have merit. The victim impact letters may reveal relevant information concerning the disputed issues of Andersen's whereabouts leading up to, during and after the murder of Trunko as well as his relationship with Trunko. To the extent deceased family members who were unavailable to sit for a deposition provided a victim impact letter containing this particular type of information, it is otherwise not available to Defendant Officers. Victim impact statements may also be relevant for credibility, cross examination, and impeachment. The reality of the federal civil discovery process is that parties often do not know if documents sought are helpful to their claims or defenses until they actually are permitted to review the documents themselves. As long as the documents meet the threshold requirements of relevancy and proportionality pursuant to Rule 26(b)(1), parties are generally entitled to obtain and review non-privileged documents. While victim letters often contain details about the anguish the victims have suffered as a result of the crime, it remains that victims often discuss facts concerning the crime in these letters. In addition, victims are often witnesses in criminal cases, and potentially witnesses in this wrongful conviction civil action. Production of these materials are also proportional to the importance of the issues at stake in this case and are not overly burdensome given that victim letters are rarely voluminous. For these reasons and given the breadth of Rule 26, the Court concludes the victim impact letters satisfy the threshold requirements for production.

Citing the Illinois Constitution and various state statutes, including the Illinois Rights of Crime Victims and Witnesses Act (the "Act"), the Board additionally argues that the victim impact statements should be immune from disclosure in this action. ILCS Const. Art 1, § 8.1(a)(2); 725 ILCS 120/4(a)(1.5). Again, because this case arises under federal law, the Court is not required to apply state law in determining whether victim impact letters at the clemency stage are privileged. *Northwestern Mem. Hosp.*, 362 F.3d at 925; *Mem. Hosp. for McHenry Cnty.*, 664 F.2d at 1061. Nonetheless, as a matter of comity, the Board urges the Court to find that the privacy interests of those who submitted victim impact letters at the clemency stage outweighs the Defendant Officers' interest in discovering the documents given their irrelevance to Andersen's claims. The Court declines the Board's comity request. First, the victim impact letters are sufficiently relevant for the reasons set forth above. Second, the Board has not shown that the procedural protections of notice and a hearing before access provided by the Illinois Constitution and the Act create an evidentiary privilege for victim impact letters in civil cases under Illinois law. *See* 725 ILCS 120/2 (stating that the purpose of the Act is "to implement, preserve, protect, and enforce the rights guaranteed to crime victims by Article 1, Section 8.1 of the Illinois Constitution to ensure that crime victims are treated with fairness and respect for their dignity and privacy throughout the *criminal justice system*, to ensure that crime victims are informed of their rights and have standing to assert their rights in the trial and appellate courts, to establish procedures for enforcement of those rights, and to increase the effectiveness of the *criminal justice system* by affording certain basic rights and considerations to the witnesses of crime who are essential to prosecution."). (emphasis added). The Court recognizes that the procedural protections contained in the Illinois Constitution and the cited state statutes are intended to protect confidentiality of crime victims'

highly personal and emotional letters.  However, the sensitive nature of the information does not justify the Board's refusal to produce relevant information in this civil context.  Because the victim impact evidence is potentially relevant here, nothing in Illinois state law commands that a federal court treat its discoverability any different than other kinds of evidence.  *Valbruna Slater Steel Corp.*, 2015 WL 6695510, at *5 (noting that "[t]here is no reason to extend to state agencies in federal court greater privileges than they enjoy in their own courts under their own law.").

Finally, the Board contends that the victim impact letters are protected from discovery by the deliberative process privilege because the letters were used by the Board in formulating and deliberating on its recommendations concerning Andersen's clemency petitions.  This argument is not persuasive.  The views of Trunko's relatives and friends contained in the victim impact letters do not reflect the impressions or deliberations of any Board member about whether clemency should be granted or denied.  Thus, the Court concludes that the deliberative process privilege does not apply to the victim impact letters.  The victim impact letters should, however, be subject to the Confidentiality Order [79] entered in this case.  *See* 730 ILCS 105/35(b) (providing that [v]ictim impact statements . . . shall not be considered public documents under provisions of the Freedom of Information Act.").

## **CONCLUSION**

For the reasons stated above, Defendants' Renewed Motion to Compel Prisoner Review Board's Compliance with Subpoena for Records [288] is granted in part, but denied in part only as to the handwritten notes discussed above.

**SO ORDERED.**

Dated:  February 4, 2019

_____
Sunil R. Harjani
United States Magistrate Judge