**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL ANDERSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 16 CV 1963** |
| | ) | |
| **v.** | ) | **Judge Virginia M. Kendall** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Harjani** |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *i*

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**SUMMARY JUDGMENT STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . 2

**I.**      Plaintiff's Lawsuit Is Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . 2

**II.**     Alternatively, Plaintiff's Federal Malicious Prosecution Claim and IIED Claim
Are Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**III.**    Summary Judgment Should be Granted on Plaintiff's *Brady* Claim in Count II. . . . . 4

**A.**     Summary Judgment Must be Granted on Plaintiff's *Brady* Claim Based on
Defendants' Alleged Failure to Disclose Bob LeGace as an Alternate Suspect, his
Polygraph Test and the Alleged Information in Stout's Records. . . . . . . . . . . . . . . . 6

       **1.**    Plaintiff Knew Bob LeGace was an Alternate Suspect and Defendants Were
Not Required to Draft Any Report Reflecting Their Opinion of Bob LeGace
as an Alternate Suspect or Their Actions in the Investigation . . . . . . . . . . . . . 9

       **2.**    The Statement "Known to Pull Knives" in John Stout's Report is Not
Admissible, is Not Material Evidence Indicating Plaintiff's's Innocence,
and Would Not Have Changed the Outcome of Plaintiff's Criminal Trial. . 12

       **3.**    Defendants Were Not Required to Disclose John Stout's Records and There is
No Evidence Defendants Intentionally Withheld the Polygraph Records. . . 15

**B.**     The Alleged Photograph of the Knife with Plaintiff's Gloves Was Not Exculpatory or
Impeaching Evidence, It Was Not Suppressed, and It was Not Material Evidence
that Would Have Changed the Outcome of Trial. . . . . . . . . . . . . . . . . . . . . . . . . . 16

**C.**     Plaintiff Testified at the Criminal Trial He was Intoxicated, Confused, and
Defendants Fed Him Information to Coerce His Confession and Therefore
Defendants Did Not Suppress Any Evidence Not Known to Plaintiff. . . . . . . . . . . 18

**D.**     Defendants Should be Granted Qualified Immunity on Plaintiff's *Brady* Claim. . . . 19

**IV.**    Summary Judgment Should be Granted on Count III, Plaintiff's Destruction of Evidence
Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**V.**     Defendants Bedran, Pawlowski, Rajewski, and Riley Should be Dismissed. . . . . . . 22

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**CASES:**

*Amundsen v. Chicago Park Dist.*
 218 F.3d 712 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Anderson v. Liberty Lobby, Inc.*
 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Arizona v. Youngblood*
 488 U.S. 51 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Armstrong v. Daily*
 786 F.3d 529 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

*Ashcroft v. al-Kidd*
 563 U.S. 731 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Beaman v. Freesmeyer*
 776 F.3d 500 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bolden v. City of Chicago*
 293 F. Supp.3d 772 (N.D. Ill. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

*Brady v. Maryland*
 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bridewell v. Eberle*
 730 F.3d 672 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Burd v. Sessler*
 702 F.3d 429 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*California v. Trombetta*
 467 U.S. 479 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Carvajal v. Dominguez*
 542 F.3d 561 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Celotex Corp. v. Catrett*
 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fox v. DeSoto*
 489 F.3d 228 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harris v. Kuba*
 486 F.3d 1010 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 21

*Heck v. Humphrey*
    512 U.S. 477 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*Holland v. City of Chicago*
    643 F.3d 248 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ienco v. Angarone*
    429 F.3d 680 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ienco v. Angarone*
    291 F. Supp. 2d 755 (N.D. Ill. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kyles v. Whitley*
    514 U.S. 419 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McCarthy v. Pollard*
    656 F.3d 478 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Manuel v. City of Joliet, Ill*
    903 F.3d 667, 670 (7th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Manuel v. City of Joliet, Ill*
    137 S.Ct. 911, 918 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Miller v. Dretke*
    431 F.3d 241(5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Padula v Leimback*
    656 F. 3d 595 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Patrick v. City of Chicago*
    213 F. Supp.3d 1033 (N.D. Ill. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Jefferson*
    705 N.E.2d 56 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rocha v. Thaler*
    619 F.3d 387 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Saunders–El v. Rohde*
    778 F.3d 556 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11, 16

*Savory v. Cannon*
    338 F. Supp. 3d 860 (N.D. Ill. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 24

*Smith v. Cain*
    565 U.S. 73 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Snow v. Pfister*
    880 F.3d 857 (7th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Snow v. Pfister*
    240 F. Supp. 3d 854 (N.D. Ill. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Strickler v. Greene*
    527 U.S. 263 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

*Taylor v. City of Chicago*
    80 F. Supp.3d 817 (N.D. Ill. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*U.S. v. Gonzalez*
    319 F.3d 291 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. Kimoto*
    588 F.3d 464 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. White*
    970 F.2d 328 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bagley*
    73 U.S. 667 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mota*
    685 F.3d 644 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*United States v. Shields*
    789 F.3d 733 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Sipe*
    388 F.3d 471 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Zackson*
    6 F.3d 911 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wallace v. Kato*
    549 U.S. 384, 393-394 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wilson v. Layne*
    526 U.S. 603 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATUTES:**

745 ILCS 10/8-101(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES OF EVIDENCE:**

Fed. R. Evid. 802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL ANDERSEN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 16 CV 1963** |
| | ) | |
| **v.** | ) | **Judge Virginia M. Kendall** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Harjani** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendant Chicago Police Officers, JAMES BEDNARKIEWICZ, RICHARD BEDRAN, JAMES HIGGINS, DANIEL MCWEENY, PAUL NIELSEN, JOHN OLSON, LARRY PAWLOWSKI, NORBERT RAJEWSKI, AND MICHAEL RILEY, (collectively "Defendants"), by and through their attorneys, Steven B. Borkan, Timothy P. Scahill, Misha Itchhaporia, and Emily E. Schnidt of BORKAN & SCAHILL LTD., and hereby submit this Memorandum in Support of Defendants' Motion for Summary Judgment.

## INTRODUCTION

Plaintiff's Complaint sets forth twelve counts, nine of which are directed at these Defendants: (I) Violations of Fifth and Fourteenth Amendments – Coerced and False Confessions; (II) Violation of Due Process; (III) Destruction of Evidence; (IV) Conspiracy to Deprive Constitutional Rights; (V) Failure to Intervene; (VI) Federal Malicious Prosecution; (VII) State Law Malicious Prosecution; (VIII) Infliction of Emotional Distress; (IX) State Law Conspiracy. SMF ¶ 5.[1] For the reasons set forth below, Defendants move for summary judgment on all of Plaintiff's claims pursuant to *Savory v. Cannon*, 338 F. Supp. 3d 860 (N.D. Ill. 2017). Defendants also move for summary judgment on certain

---

[1] Citations to Defendants' Statement of Material Facts shall be cited as "SMF ¶ ____." Citations to exhibits therein shall be those in Defendants' Addendum of Exhibits.

1

claims made within Count II and the entirety of Counts III and VIII. Lastly, Defendants move to summarily dismiss Defendants Pawlowski, Rajewski, Riley, and Bedran.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To determine whether there is a genuine issue of material fact, courts construe the factual record in the light most favorable to the non-movant and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If it is clear, that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only proper, but mandated. *See Celotex*, 477 U.S. at 322; *Padula v Leimback*, 656 F. 3d 595, 600-501 (7th Cir. 2011).

<u>ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT</u>

**I.      Plaintiff's Lawsuit is Barred by the Statute of Limitations.**

Plaintiff's claims are barred by the statute of limitations and this Honorable Court should follow the holding set by the Honorable Judge Feinerman and dismiss Plaintiff's lawsuit. *Savory v. Cannon*, 338 F. Supp.3d 860 (N.D. Ill. 2017), *rev'd and remanded*, 912 F.3d 1030 (7th Cir. 2019), *reh'g en banc granted, opinion vacated* (Mar. 6, 2019). In *Savory*, plaintiff was arrested and convicted in 1977. *Id.* at 862. After the appellate court reversed, plaintiff was re-tried and convicted in 1981. *Id.* Plaintiff was released from prison on parole in 2006 and his parole terminated in 2011. *Id.* In 2015, plaintiff received a pardon and in 2017 he filed a civil lawsuit for coerced confession, fabrication of evidence, destruction of evidence, and *Brady* violations. *Id.* Defendants sought dismissal of plaintiff's federal claims, arguing *Heck v. Humphrey* only barred plaintiff from bringing his claims until 2011, when his parole terminated. *Id.* at 863, *citing Heck v. Humphrey*, 512 U.S. 477 (1994). As such, defendants argued, the statute of

limitations expired in 2013. *Id.* The court agreed and noted plaintiff's custody ended when his parole terminated. *Id.* at 864, *citing Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir. 2012). The *Heck* bar lifted when plaintiff could no longer seek federal habeas relief and plaintiff's §1983 claims accrued when the *Heck* bar lifted. *Id.* Judge Feinerman found plaintiff's claims to be untimely as they were filed more than two years after plaintiff's parole terminated and dismissed the lawsuit. *Id.* at 864, 866.

Here, Defendants ask this Honorable Court to follow the analysis Judge Feinerman made and dismiss Plaintiff's claims as untimely. Plaintiff was released from parole on April 24, 2010. SMF ¶ 2. Plaintiff's §1983 claims accrued on April 24, 2012 and his state law claims accrued on April 24, 2011. 745 ILCS 10/8-101(a). He did not file the present lawsuit until February 4, 2016. SMF ¶ 3. Plaintiff will likely argue the Seventh Circuit reversed Judge Feinerman's opinion, but the Seventh Circuit subsequently granted a rehearing *en banc* on March 6, 2019. As such, the Seventh Circuit's opinion was vacated and Judge Feinerman's opinion and the analysis therein is still instructive as to how this Honorable Court should rule on the applicable statute of limitations in the present case. Plaintiff's case should be dismissed in its entirety.

## II. Alternatively, Plaintiff's Federal Malicious Prosecution Claim and IIED Claim Are Barred by the Statute of Limitations.

In the event this Honorable Court elects not to dismiss Plaintiff's lawsuit as untimely, Counts VI and VIII should be time barred. In Count VI, Plaintiff's "Federal Malicious Prosecution" claim, Plaintiff alleges that the Defendants initiated and continued his prosecution without probable cause in violation of his Fourth and Fourteenth Amendment rights. Plaintiff's detention ended in 2007, but he waited more than nine years until February 2016 to bring his "Federal Malicious Prosecution" claim. SMF ¶ ¶ 3, 5. Plaintiff's claim is time barred by the applicable two-year statute of limitations. *See Manuel v. City of Joliet, Ill*, 903 F.3d 667, 670 (7th Cir. 2018)(finding a plaintiff's Fourth Amendment wrongful detention claim accrues at the end of the detention) (hereinafter "*Manuel II*").

First, there is no cognizable "Federal Malicious Prosecution" claim. *Id.* at 670. Rather, *Manuel II* recognizes a Fourth Amendment pretrial deprivation claim. *Manuel v. City of Joliet*, Ill 137 S. Ct. 911, 918 (2007). Second, it is well established that the Fourth Amendment drops out once trial occurs. *Manuel,* 137 S. Ct. at 920 ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment."). Thus, Plaintiff's pretrial detention claim under the Fourth Amendment is time barred as it accrued when his pretrial detention ended upon his conviction in March 1982. *Manuel II*, 903 F. 3d at 670. Third, to the extent that Plaintiff argues his claim would have implicated *Heck* and likely would have barred his claim until his conviction was set aside in 2015, Plaintiff is incorrect. SMF ¶ 3. *Heck* holds that a cause of action under § 1983 that necessarily implies the invalidity of a criminal conviction does not accrue and cannot be sued upon until the criminal conviction is reversed, vacated or otherwise set aside. *Heck*, 512 U.S. at 489. However, when there is no conviction, *Heck's* accrual rules do not apply. *Wallace v. Kato*, 549 U.S. 384, 393-394 (2007). As such, *Heck* has no application in the pre-conviction context. *Fox v. DeSoto*, 489 F.3d 228, 237 (6th Cir. 2007).

Similarly, this Court should dismiss Plaintiff's IIED claim in Count VIII. It is well-established in this Circuit that "a claim of [IIED] in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *see also Taylor v. City of Chicago*, 80 F. Supp.3d 817, 828 (N.D. Ill. 2015)(dismissing IIED claim in reverse conviction case because statute of limitations began to run on date of arrest). Here, Plaintiff was arrested on January 24, 1980. SMF ¶ 54. As such, any IIED claim expired on January 24, 1981. Count VIII should be summarily dismissed.

### III.   Summary Judgment Should be Granted on Plaintiff's *Brady* Claim in Count II.

In Plaintiff's Count II, Plaintiff alleges, in pertinent part, Defendants violated Plaintiff's Fourteenth Amendment Due Process rights by deliberately withholding exculpatory evidence in

4

violation of *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* claim").[2] Plaintiff's *Brady* claims within Count

II must be summarily dismissed. Plaintiff's *Brady* claim centers on the following facts:

> "[T]he Defendants withheld from [Plaintiff], his criminal defense attorney, and the prosecution, evidence of their investigation into Bob Legace (*sic.*) and his identity as a suspect in the Trunko homicide."

> "The Defendant Officers further withheld the fact that while Plaintiff was in an intoxicated and extremely confused state, they fed him details about the crime that were not otherwise available to Plaintiff, including the location of the crime, the location of the victim's stab wounds, and the location from which they recovered the knife they falsely claimed was the murder weapon."

> "[T]he Defendants withheld a photograph depicting the knife they retrieved (and wrongly described as the murder weapon) alongside a pair of gloves, which they showed to Plaintiff in an effort to confuse and coerce him into confessing. The foregoing evidence and potentially other exculpatory evidence was likely to have been documented in Defendants' notes, inter-office memos, crime worksheets, and other unofficial reports, all of which would be contained in one or more Area 3 homicide files regarding the Trunko case."

> "[T]he Defendants withheld from [Plaintiff], his criminal defense attorney, and the prosecution, additional evidence of their investigation into Bob Lagace (*sic.*) and his identity as a suspect in the Trunko homicide, including Defendants arranging for detectives to administer four separate polygraph examinations of Lagace (*sic.*), the results of which were "erratic.""

> "...Defendants withheld from him, his criminal defense attorney, and the prosecution, further additional evidence of their investigation into Bob Lagace (*sic.*) and his identity as a suspect in the Trunko homicide, including Defendants' knowledge that Lagace (*sic.*) was known to have pulled knives on Cathy Trunko prior to her murder." SMF ¶ 88.

In short, Plaintiff claims Defendants failed to disclose the exculpatory evidence that Bob LeGace was

an alternate suspect in the Trunko homicide investigation, that he was given a polygraph test during

the investigation, and, according to polygraph examiner John Stout, LeGace was known to pull knives

on Trunko. Plaintiff further alleges Defendants should have drafted a police report reflecting their

investigation involving LeGace but have never produced such a report. Plaintiff's *Brady* claim is also

based on Defendants allegedly creating a photograph depicting the murder weapon and Plaintiff's

---

[2] Count II also includes a claim for fabrication of evidence in violation of Plaintiff's Due Process rights. Defendants do not seek to dismiss Plaintiff's fabrication of evidence claim in Count II.

gloves and failing to disclose that photograph. Lastly, Plaintiff claims the Defendants suppressed Plaintiff's intoxication and their coercion on Plaintiff to falsely confess.

### A. Summary Judgment Must Be Granted on Plaintiff's *Brady* Claim Based on Defendants' Alleged Failure to Disclose Bob LeGace as an Alternate Suspect, his Polygraph Test and the Alleged Information in Stout's Records.

In support of his *Brady* claim, Plaintiff first alleges Defendants failed to disclose their alleged consideration of Bob LeGace as an alternate suspect, Bob LeGace's polygraph on January 21, 1980, or that he was allegedly known to pull knives on Trunko, a woman he met two days before her murder. The record in this case establishes summary judgment must be granted because the evidence was known to Plaintiff at the time of his criminal trial, Defendants were not under any duty to disclose the evidence, the allegedly withheld evidence was not material to Plaintiff's criminal trial, disclosure of the evidence would not have changed the outcome of the case, and Plaintiff's defense counsel could have ascertained the allegedly suppressed evidence at the time of Plaintiff's criminal trial.

To establish a *Brady* due process claim, Plaintiffs must show three elements: "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning that there is reasonable probability that the result of the proceeding would have been different." *Carvajal v. Dominguez*, 542 F.3d 561, 566-567 (7th Cir. 2008). Taking each element in turn, it is clear the case law establishes Plaintiff's *Brady* claim cannot survive summary judgment.

First, the evidence in question must be exculpatory or impeaching. A police officer making a false statement or lying to the prosecution is not exculpatory evidence. *Carvajal*, 542 F.3d at 567. *Brady* also does not require officers to disclose that they have different perspectives of an investigation or arrest. *Id.* at 567-68. Additionally, where too many inferences have to be made to reach a conclusion that the suppressed evidence is exculpatory, then such evidence is not *Brady* material. *Id.* at 568, *citing Harris v. Kuba*, 486 F.3d 1010, 1016 (7th Cir. 2007)("None of the pieces of evidence [plaintiff] points

6

to, when considered at face value, is exculpatory.... [T]he evidence is arguably favorable only after several inferences are made.... This stretches the meaning of 'favorable' beyond that of *Brady*.").

Second, there must be evidence the exculpatory evidence was suppressed, either willfully or inadvertently. This second element requires proof of two necessary facts: there must be actual evidence and it must have been suppressed. Mere speculation that a report exists and that it was suppressed is insufficient evidence to support a *Brady* claim. *United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015)(finding the appellant failed to point to any specific evidence that was suppressed by the government and therefore could not prove a *Brady* violation). While a plaintiff may argue a report should have been drafted, the failure to draft a report also does not create a *Brady* violation. *United States v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012)(finding failure to prepare a written report does not create a *Brady* violation by itself). Seventh Circuit case law makes clear that *Brady* does not require police officers to create exculpatory evidence, nor does it compel officers to accurately disclose the circumstances of their investigation. *Saunders–El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015).

In determining whether evidence was suppressed, it is essential for plaintiff to prove the information could not have been reasonably obtained from other sources. *See Harris*, 486 F.3d at 1015; *U.S. v. Kimoto*, 588 F.3d 464, 492 (7th Cir. 2009)(materials that could have been located could not form basis for *Brady* violation); *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)(no *Brady* claim based on suppression of law enforcement records that could have been located by defendant); *U.S. v. Gonzalez*, 319 F.3d 291, 297-98 (7th Cir. 2003)(failure to disclose existence of evidence that "could have...and should have" been located by defense attorney through exercise of reasonable diligence foreclosed *Brady* claim); *U.S. v. White*, 970 F.2d 328, 337 (7th Cir. 1992)("Regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim."). In this regard, a defendant in a criminal case has the

"responsibility to probe the witnesses and investigate their versions of the relevant events" and failure to discover the information held by such persons does not amount to a *Brady* violation. *Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011); *Carvajal*, 542 F.3d at 567.

Lastly, a plaintiff must prove the suppressed evidence was material enough to reasonably impact the outcome of the criminal trial. It is not sufficient for a plaintiff to allege the undisclosed evidence may have impacted the outcome of the criminal trial. Instead, the Supreme Court has routinely held that to demonstrate a *Brady* claim, "a plaintiff must make a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Saunders-El*, 778 F.3d at 561 *citing Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *see also Smith v. Cain*, 565 U.S. 73, 75 (2012); *Strickler v. Greene*, 527 U.S. 263, 290 (1999). Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 685 (1985). Moreover, speculation as to whether evidence is exculpatory is not sufficient to support a *Brady* claim, especially when the alleged suppressed evidence is not supported by other evidence establishing the suppressed evidence was exculpatory. *See infra, Beaman v. Freesmeyer,* 776 F.3d 500, 507 (7th Cir. 2015). Courts have repeatedly held that allegedly suppressed evidence's materiality should be considered in light of other evidence, not merely on the probative value of the suppressed evidence standing alone. *Kyles*, 514 U.S. at 420 (the disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item); *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) *citing United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)("The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the [prosecution].") If the allegedly suppressed evidence only provides incremental impeachment value or is cumulative of other evidence presented, then it does

not rise to the level of *Brady* materiality and the *Brady* claim must necessarily fail. *Id.; Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005).

> **1. Plaintiff Knew Bob LeGace was an Alternate Suspect and Defendants Were Not Required to Draft Any Report Reflecting Their Opinion of Bob LeGace as an Alternate Suspect or Their Actions in the Investigation.**

Plaintiff's first basis for his *Brady* claim is that he was not aware Defendants considered Robert "Bob" LeGace to be an alternate suspect and that should have been documented in a report. Plaintiff's claim must fail because his counsel's statements before and during his criminal trial establishes he knew Bob LeGace was a suspect and Defendants were not required to create exculpatory evidence.

On January 24, 1980, Plaintiff told detectives he heard a man by the name of "Bob" killed Trunko. SMF ¶ 48. On August 11, 1981, Diane Diaz told Sheila Murphy additional information about "Bob LeGace" that was not included in the January 20, 1980 supplemental police report. SMF ¶ ¶ 57 – 65. She told Murphy that on January 18, 1980, LeGace became angry with Trunko because she was talking to a man LeGace's sister was dating. SMF ¶ 64. The following day, on January 19, 1980, LeGace spoke to Trunko on the telephone and then he left Dot's Tavern to pick her up. SMF ¶ ¶ 57 – 58. He returned 30 minutes later sweaty, out of breath, and with cash. SMF ¶ 58. LeGace told Diaz he was within the vicinity of Trunko's house but could not locate her. SMF ¶ 59. Diaz saw LeGace was carrying a knife with him on January 19, 1980. SMF ¶ 60. Diaz advised Murphy that within a few days after she gave her initial statement, Bedran and another detective came to her house and spoke to her about LeGace leaving the bar to look for Trunko. SMF ¶ 61. The detectives then asked LeGace to come with them to the police station. SMF ¶ 62. They were gone for approximately three hours and then a detective called and asked Diaz if she believed LeGace killed Trunko. SMF ¶ 63.

After this statement, Murphy did not speak to LeGace or question him about why he was brought to the police station and what occurred while he was with detectives. SMF ¶ 67. Nevertheless, Murphy said she knew LeGace was alive and well. SMF ¶ 68. `There is also no evidence Murphy

sought additional information from Defendants about Diaz's August 1981 statement. SMF ¶ 69. Bedran and his partner, Richard Rochowicz, were not called to testify at trial. SMF ¶ 70.

During her opening statement, Murphy described LeGace's actions on January 19, 1980. SMF ¶ 71. She told the jury LeGace left Dot's Tavern to pick Trunko up and was gone a long time. SMF ¶ 71. Upon his return, Murphy said LeGace was exhausted, sweaty, and breathing heavily. SMF ¶ 71. When Diaz was called as a witness, she testified LeGace left the bar while she was talking to Trunko and returned later sweaty and he asked what was wrong with Cathy. SMF ¶ ¶ 74 – 75. Later, during argument to the judge, Murphy argued LeGace had the motive to kill Trunko and he was the one who committed the crime. SMF ¶ 77. The fact that the police at some point considered LeGace to be an alternate suspect or that LeGace was, as Plaintiff claims, "known to pull knives" on Trunko was not material and would not have changed the outcome because that was information Murphy knew or could have discovered had she been diligent in investigating this case. SMF ¶ ¶ 69 – 70.

As argued *infra,* Defendants' opinions of LeGace is not exculpatory or impeachment evidence as applied to *Brady.* Nevertheless, to the extent this Court determines Defendants' opinions of LeGace and whether they considered him to be a suspect is "evidence," this evidence was not suppressed. A key element to any *Brady* claim is proof that the evidence was suppressed by the state. *Carvajal*, 542 F.3d at 566-567; *see also Patrick v. City of Chicago,* 213 F. Supp.3d 1033, 1053 (N.D. Ill. 2016) *citing United States v. Shields,* 789 F.3d 733, 747 (7th Cir. 2015)(potentially exculpatory evidence was easily accessible through other means and therefore not suppressed); *Harris*, 486 F.3d at 1015 (there was no *Brady* violation when a report was produced to criminal defense attorney and with minimal research, the criminal defense attorney could have verified defendant's alibi); *United States v. Zackson*, 6 F.3d 911, 919 (2d Cir. 1993)(noting that where a defendant is on notice of the essential facts that would allow him to take advantage of exculpatory evidence, that evidence is beyond the purview of *Brady*). Here, Plaintiff cannot argue he did not know LeGace was an alternate suspect or Defendants considered

him to be an alternate suspect. As late as August 11, 1981, Murphy knew Bedran considered LeGace to be an alternate suspect because he took LeGace to the police station for questioning and later asked Diaz if she thought LeGace killed Trunko. SMF ¶ 63. Murphy could have Diaz's statement to cross-examine Bedran, or any Defendant Officer, or to question LeGace himself. She chose not to do so, despite having had knowledge Bedran brought LeGace into the police station for three hours and a detective asked Diaz if she thought he murdered Trunko. SMF ¶ 63. Murphy also identified LeGace as an alternate suspect during the criminal trial. Murphy argued to the judge that Plaintiff was innocent and LeGace was the person with the motive to kill Trunko, and in fact killed Trunko. SMF ¶ 77. Her arguments were based, in part, on her knowledge the police treated LeGace as a suspect. As such, Plaintiff cannot maintain his *Brady* claim as it relates to LeGace.

Additionally, Plaintiff's argument rests on the assumption that Defendants drafted a report that was subsequently withheld. Plaintiff asserts Defendants withheld exculpatory evidence about LeGace by failing to disclose information that "was likely to have been documented" in their notes, memos, or unofficial reports. SMF ¶ 88. While Plaintiff may believe Defendants, specifically Bedran, should have drafted a report reflecting the information the detectives learned or knew prior to LeGace sitting for a polygraph, or reflecting the information they purportedly gave John Stout, that belief is not supported by any evidence. There is no evidence Bedran, or any Defendant, drafted a police report about LeGace's polygraph. Therefore, there was no evidence withheld from Plaintiff. No officer, detective, or witness testified they reviewed a detective's police report reflecting any information about LeGace, his polygraph, or what the detectives learned from January 20 to January 21, 1980.[3] Defendants were not under the obligation to create a report that Plaintiff believes should contain exculpatory information. *Mota*, 685 F.3d at 649; *Saunders-El v. Rohde*, 778 F.3d at 562. In short, there

---

[3] There is a report reflecting what LeGace told detectives on January 20, 1980. SMF ¶ 17. That report was disclosed to Plaintiff before his criminal trial. John Stout's report and notes are the only police records reflecting what the detectives knew on January 21, 1980. SMF ¶ ¶ 19, 23. John Stout is not a defendant.

is no evidence Defendants withheld any report they drafted reflecting their opinion of LeGace as an alternate suspect or the information contained within John Stout's polygraph records and Plaintiff's *Brady* claim, to the extent it is based on that assumption, should be summarily dismissed.

### 2. The Statement "Known to Pull Knives" in John Stout's Report is Not Admissible, is Not Material Evidence Indicating Plaintiff's Innocence, and Would Not Have Changed the Outcome of Plaintiff's Criminal Trial.

Plaintiff's *Brady* claim is also based on his belief the polygraph records and the statement in John Stout's report potentially stating "known to pull knives" was exculpatory evidence. First, it must be noted the polygraph records themselves are not admissible evidence and they would not have been admissible under Illinois law. Fed. R. Evid. 802; *Snow v. Pfister*, 240 F. Supp. 3d 854, 890 (N.D. Ill. 2016). As such, the records on their own and any statement in the records cannot serve as the basis of Plaintiff's *Brady* claim. *Snow*, 240 F. Supp. at 890 ("The [ ] *Brady* claim [based on the failure to disclose polygraph records] also fails because under Illinois law, polygraph evidence is inadmissible, and under Seventh Circuit law only admissible evidence is subject to *Brady*'s disclosure requirements.").

Second, this alleged statement is not material evidence indicating Plaintiff's innocence and it would not have changed the outcome of Plaintiff's criminal trial. In *Beaman*, the Seventh Circuit specifically rejected a *Brady* claim based on the failure to disclose polygraph records because the arguments plaintiff made based on the failure to disclose the polygraph records was not supported by any other evidence and, therefore, the polygraph could not be characterized as material evidence that with a reasonable probability would have resulted in a different outcome. *Beaman*, 776 F.3d at 507-8. Plaintiff argued the failure to disclose the polygraph test of an alternate suspect, Gates, was *Brady* evidence and its non-disclosure violated plaintiff's constitutional rights. *Id.* at 506. In support, plaintiff argued Gates had the motive to kill the victim and had plaintiff been given the polygraph during his criminal trial, his defense team could have investigated Gates' whereabouts at the time of the murder, to counter the alibi the police investigated, or asked the court to allow evidence Gates committed the

murder. *Id.* at 507. The Seventh Circuit rejected that argument, finding the polygraph was not material because it did not negate Gates' alibi and, while Gates' polygraph test results were erratic, plaintiff failed to present any independent evidence that Gates was a viable alternative suspect or he had the opportunity to commit the murder. *Id.* at 508. As such, plaintiff's argument failed because he did not establish a reasonable probability that the result of his criminal trial would have been different if the polygraph was disclosed during the trial. *Id.* at 507.

Similarly, in *Snow*, both the district court and the Seventh Circuit found un-redacted polygraph tests and the corresponding notes were not *Brady* evidence. *Snow v. Pfister*, 880 F.3d 857, 869 (7th Cir. 2018); *Snow*, 240 F. Supp. 3d at 890-91. One polygraph test, the Seventh Circuit noted, was vague and repetitive of information plaintiff already knew. *Snow*, 880 F.3d at 870. The other polygraph test of a different suspect, indicating that suspect was not being truthful in his responses, the Court found may have been used as impeachment evidence but would not have changed the outcome of the case. *Id.* When considering the evidence cumulatively, in light of the evidence presented against plaintiff and by plaintiff, the Court determined even disclosure of the polygraph tests and notes would not have changed the outcome finding plaintiff guilty. *Id.* at 891-92.

Importantly, in the present case, Plaintiff presented little evidence to the jury regarding LeGace not because the evidence was suppressed, but because of his counsel's own mistake at trial and because much of the evidence was inadmissible double hearsay. Plaintiff could have and intended to present testimony that LeGace met Trunko on January 18, 1980, the day before Trunko's homicide, and he was angry with Trunko because she was speaking to a man who was dating LeGace's sister. SMF ¶ 65. He was also seemingly attracted to Trunko because he complimented Diaz on having a good looking friend. SMF ¶ 66. All of this information the judge ruled was inadmissible hearsay or double hearsay as Diaz would have been relaying what LeGace said to her and what she heard LeGace tell Trunko. SMF ¶ 78. Murphy intended to present evidence that on January 19, 1980, LeGace was drinking seven-

13

ounce Old Style beer at Dot's Tavern and left the tavern to bring Trunko to the bar after telling her on the telephone he was going to pick her up. SMF ¶ 75. A seven-ounce Old Style beer bottle was collected as physical evidence in this case. SMF ¶ 75. Again, the judge barred Plaintiff from presenting any conversation LeGace had with Diaz or Trunko as double hearsay. SMF ¶ 78. The remainder of the information, regarding Diaz's observations of LeGace, was not presented because Murphy forgot to question Diaz during her direct on those topics. SMF ¶ 75 – 76.

Whether LeGace was "known to pull knives" on Trunko was not material to the evidence Murphy presented or intended to present. It was not proof Plaintiff was innocent of the murder nor did it show LeGace had the motive or opportunity to murder Trunko. Additionally, the statement "known to pull knives" on Trunko was seemingly based on rumor and was not tied to any specific person making such a statement. SMF ¶ 22. To date, Plaintiff has not presented any evidence to corroborate, or even introduce, the statement that LeGace was "known to pull knives" on Trunko. Therefore, this statement remains inadmissible hearsay by an unknown declarant and has never been corroborated by any other evidence. *See Beaman*, 776 F.3d at 508. While Plaintiff may argue he could have asked Bedran where that statement came from, such a question would have been barred as based inherently on hearsay. As such, the information in Stout's records was inadmissible, not corroborated by any other evidence to date, and would not have changed the outcome of the case.

Moreover, Stout testified the statement in his polygraph notes may not actually read that LeGace was "known to pull knives on victim." SMF ¶ 21. Nevertheless, Plaintiff is treating his interpretation of what the note may say and has based his *Brady* claim on a handwritten note the transcriber himself, Stout, is unsure of what it says. Plaintiff has failed to provide evidence that Stout's note does, in fact, read "known to pull knives on victim." Even assuming the note reads as Plaintiff interprets it, Plaintiff has not provided any evidence that LeGace was known by any person to pull knives on Trunko or that he ever pulled a knife on her on one occasion. Indeed, Diaz, Mary

14

Gladkowski, and Diane Mottier, Trunko's good friends, denied having any knowledge of LeGace pulling knives on Trunko. SMF ¶ 22. Furthermore, the statement "known to pull knives on victim" does not coincide with the other evidence Plaintiff has presented: that LeGace only knew Trunko for two days and therefore logically cannot be said to routinely or have a pattern of pulling knives on Trunko in those two days. SMF ¶ 21. Plaintiff cannot base his *Brady* claim on a misinterpretation of a handwritten note that, in light of the other evidence, has not been substantiated. There is no reasonable probability that Plaintiff's misinterpretation of the handwritten note would have changed the outcome of his trial.

Just as the Seventh Circuit held in *Beaman* and *Snow*, this Court should deny Plaintiff's *Brady* claim based on the possible statement in Stout's report that LeGace was "known to pull knives" on Trunko. The polygraph record itself was not admissible and the statements in the records were hearsay. Plaintiff has failed to present any evidence that Stout's report actually reads "known to pull knives on victim," that LeGace ever actually pulled knife on Trunko, or how LeGace being known to pull knives on Trunko indicated Plaintiff's innocence. The statement in Stout's report was not material, it was cumulatively not material evidence, and admitting the statement, notwithstanding the Rules of Evidence barring hearsay, would not have changed the outcome of Plaintiff's criminal trial.

### 3. Defendants Were Not Required to Disclose John Stout's Records and There is No Evidence Defendants Intentionally Withheld the Polygraph Records.

Plaintiff's *Brady* claim is also based on John Stout's polygraph records created during and after LeGace's polygraph. This claim cannot stand because Defendants were not under an obligation to disclose any record not in their possession. John Stout testified after he conducted a polygraph examination, he put his final conclusions in a case review report and put it in the Polygraph Unit case file. SMF ¶ 23. John Stout did not give a copy of his notes or his report to the detectives. SMF ¶ 23. Therefore, these documents would not have been in Defendants' possession nor would it have been their responsibility to put the polygraph report or notes in the detectives' homicide file so it would be

disclosed to Plaintiff during his criminal trial. *Ienco v. Angarone*, 291 F. Supp. 2d 755, 761 (N.D. Ill. 2003), *aff'd*, 429 F.3d 680 (7th Cir. 2005)(finding no *Brady* violation where there is no evidence the officers ever possessed or were even aware of a report prior to a criminal hearing). While Defendants dispute the polygraph report or notes are exculpatory evidence, there is no evidence Defendants possessed these documents to create an obligation to disclose these documents or that they correspondingly withheld these documents. As such, Plaintiff's *Brady* claim, to the extent it relies on the failure to disclose the polygraph case report, results, or notes should be summarily dismissed.

### B. The Alleged Photograph of the Knife with Plaintiff's Gloves Was Not Exculpatory or Impeaching Evidence, It Was Not Suppressed, and It was Not Material Evidence that Would Have Changed the Outcome of Trial.

Plaintiff's *Brady* claim is also based on the alleged failure of Defendants to disclose a photograph he claims he was shown before his confession. This photograph purportedly depicts the knife, which he claims is not the murder weapon, stuck in the ground with Plaintiff's gloves nearby. SMF ¶ ¶ 49 – 50. Plaintiff alleges this photograph was suppressed exculpatory evidence. Notably, Plaintiff has not provided any evidence that this photograph exists, except for his own testimony. Defendants deny such a photograph exists. Nevertheless, Plaintiff claims this exculpatory evidence was suppressed and production of the photograph could have materially changed the criminal trial.

Importantly, this portion of Plaintiff's *Brady* claim is a recasting of his fabrication claim also contained in Count II. Plaintiff alleges on the one hand, the photograph with his gloves was fabricated by the police and used against him during his confession. SMF ¶ 89. On the other hand, he alleges the photograph with the gloves was exculpatory evidence suppressed at trial. SMF ¶ 88. This portion of Plaintiff's *Brady* claim should be dismissed. The Seventh Circuit does not permit recasting evidence-fabrication claims as *Brady*-based due process claims and Plaintiff's attempt to re-characterize his fabrication claim as a *Brady* claims should not be countenanced. *See Saunders-El*, 778 F.3d at 562 (holding fabrication claim recast as a *Brady* claim is not a cognizable claim).

16

Even if this Court finds Plaintiff's *Brady* claim based on the alleged suppression of the photograph of the knife and Plaintiff's gloves is distinct from Plaintiff's fabrication claim, Plaintiff's assertion the photograph and evidence of the photograph was suppressed during his criminal trial are directly contradicted by his own testimony and Murphy's questioning. Plaintiff testified he was shown a photograph and gloves during his testimony; as such, the evidence was not suppressed. Plaintiff testified the detectives told him they found the murder weapon and showed him a photograph of the knife, and then showed a second photograph of the knife with a pair of gloves. SMF ¶ 79. On cross-examination, the prosecutor asked Plaintiff about the photograph with the knife and gloves. SMF ¶ 80. Plaintiff could not describe the gloves and guessed someone took a picture of the knife alone and another picture with the gloves. SMF ¶ 80.

On re-direct examination, Murphy again questioned Andersen about the photograph with the knife and gloves. Plaintiff said he was shown a photograph with the knife and gloves and he has not seen that photograph since his arrest. SMF ¶ 81. Clearly, the photograph was never suppressed because Plaintiff saw it in person on January 24, 1980 and then he testified extensively at the criminal trial about having seen the photograph. Murphy also questioned Higgins about the photograph during the Motion to Quash hearing. SMF ¶ 82. For evidence to be *Brady* evidence, Plaintiff must prove he did not know about the evidence at the time of the trial. *Strickler*, 527 U.S. at 280-281 (The *Brady* rule encompasses information known only to the police and not the prosecutor). Here, Plaintiff cannot even argue the photograph with the knife and his gloves was known only to the police or the prosecutor as he saw it and testified about the existence of the evidence.

Plaintiff may argue he was not given the physical photograph, which he claims was a violation of *Brady*. However, the photograph itself is not exculpatory evidence and therefore not material evidence that would have, with a reasonable probability, changed the outcome of the criminal trial. *Saunders-El*, 778 F.3d at 561. Indeed, the photograph inculpates Plaintiff and provides further evidence

that he committed the murder. Plaintiff testified at his deposition that when he saw the photograph with the gloves and the knife, he realized they were his gloves. SMF ¶ 49. It was at the moment of seeing the gloves with the knife that he told Higgins those were his gloves and he believed he murdered Trunko. SMF ¶ 50. Plaintiff's own testimony establishes this photograph inculpates him to the crime and therefore is not suppressed exculpatory evidence. As such, had Defendants provided the photograph of the knife with Plaintiff's gloves, there is no reasonable probability it would have changed the outcome of the trial. Plaintiff cannot maintain a *Brady* claim based on evidence he knew about and inculpated him in this crime.

### C. Plaintiff Testified at the Criminal Trial He was Intoxicated, Confused, and Defendants Fed Him Information to Coerce His Confession and Therefore Defendants Did Not Suppress Any Evidence Not Known to Plaintiff.

The final basis of Plaintiff's *Brady* claim is that Defendants withheld that Plaintiff was intoxicated and they fed him details about the crime to fabricate a confession. Again, Plaintiff recasts this fabrication of evidence claim as a *Brady* claim. Nevertheless, Plaintiff cannot maintain this *Brady* claim because all of these facts were known to him at the time they occurred. Moreover, Plaintiff argued these points during the criminal trial. He testified he was intoxicated, he might have been hallucinating, and Higgins coerced him into confessing to the crime by feeding him facts about the murder. SMF ¶ 83. Further, Riley testified Plainitiff was highly intoxicated when he saw him. SMF ¶ 46. While Plaintiff may argue Defendants testified untruthfully, when they denied feeding Plaintiff information about Trunko's murder or they did not coerce him to confess, false statements cannot serve as the basis of a *Brady* claim. *Carvajal*, 542 F.3d at 567. This final allegation of a *Brady* violation cannot stand because Plaintiff knew about the evidence and it was presented at his criminal trial. Plaintiff cannot prove there was any suppressed exculpatory evidence.

**D. Defendants Should Be Granted Qualified Immunity on Plaintiff's *Brady* Claim.**

Even if this Court finds the foregoing evidence that Plaintiff relies on in support of his *Brady* claim is material, exculpatory evidence, Defendants should be granted qualified immunity. First, as to the polygraph records and the information in those records, case law is clear that in 1980 polygraph records were inadmissible in Illinois. *Beaman*, 776 F.3d at 509 *citing People v. Jefferson*, 705 N.E.2d 56, 60 (1998)("[T]he general rule in Illinois is to preclude the introduction of evidence regarding polygraph examinations and the results of those tests.") As such, in 1982 there was no clearly established law that Defendants were obligated to disclose Stout's polygraph records. *Beaman*, 776 F.3d at 510 ("Arguably, it was not until *Wood* [decided in 1995] that it became clearly established that inadmissible polygraph tests stood any chance of *ever* being *Brady* material.") Defendants should be granted qualified immunity as it relates to the polygraph records and the information in those records. *Id.* ("Therefore, we find Defendants are entitled to qualified immunity for their failure to turn over the [alternate suspect's] polygraph report to the prosecution and defense counsel.").

Additionally, Defendants should be granted qualified immunity for their opinion that LeGace was at one point a suspect. In 1982, when Plaintiff's criminal trial concluded, there was no clearly established law requiring an officer to disclose his personal thoughts on whether he considered someone to be an alternate suspect when the thoughts were not memorialized in a police report. For Plaintiff to counter Defendants' qualified immunity argument, he must identify existing precedent that places the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)("[E]xisting precedent must have placed the…constitutional question beyond debate.") In doing so, he must provide "[A] consensus of cases of persuasive authority [out of their jurisdiction] such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603 (1999). As discussed, there were no reports that Defendants withheld, so Plaintiff's entire *Brady* claim regarding LeGace as an alternate suspect rests of Defendants' thoughts and opinions.

Plaintiff cannot identify any case law that clearly establishes Defendants were required to disclose their opinions of LeGace to Plaintiff. Defendants should be granted qualified immunity on Plaintiff's *Brady* claim for failing to disclose that LeGace was an alternate suspect.

Lastly, Defendants should be granted qualified immunity on Plaintiff's *Brady* claim to the extent it relies on the failure to disclose the photograph of Plaintiff's gloves and the knife or Plaintiff's intoxication and allegedly fabricated confession. As discussed, the alleged photograph establishes Plaintiff's guilt. Plaintiff testified the gloves in the photograph were his gloves and being shown this photograph convinced him he was guilty of the crime. Defendants cannot be liable for failing to disclose evidence that further proves Plaintiff's guilt. There was no clearly established law in 1982 that required Defendants to disclose evidence that would only impeach Plaintiff when he denied committing this crime, or further proves Plaintiff's guilt. *California v. Trombetta,* 467 U.S. 479, 488-89 (1984)(good-faith failure to preserve evidence with no apparent exculpatory value did not violate due process). Additionally, there was no clearly established law that testifying falsely is exculpatory evidence that must be disclosed. Defendants should be granted qualified immunity for their alleged suppression of the photograph with Plaintiff's gloves and the knife.

## IV. Summary Judgment Should be Granted on Count III, Plaintiff's Destruction of Evidence Claim.

Plaintiff's Count III alleges Defendants destroyed a beer bottle collected on January 21, 1980 and the fingerprint card for partial fingerprints lifted from the beer bottle which would have contained exculpatory evidence in violation of Plaintiff's constitutional rights. SMF ¶ 90. A plaintiff alleging destruction of evidence must show "(1) that defendant destroyed potentially exculpatory evidence in bad faith or while engaged in other misconduct, and (2) a deprivation of plaintiff's liberty." *Bolden v. City of Chicago*, 293 F. Supp.3d 772, 778 (N.D. Ill. 2017) *citing Armstrong v. Daily*, 786 F.3d 529, 550 (7th Cir. 2015). Bad faith in the destruction of evidence is established when the allegations "paint the defendant as pursuing plaintiff through any means necessary." *Id.* Additionally, for destroyed evidence,

20

a plaintiff must prove there was potential or apparent exculpatory value in the destroyed evidence. *Bolden*, 293 F. Supp.3d at 778 *citing Armstrong*, 786 F.3d at 552. "To be considered "apparently" exculpatory, the exculpatory nature of the evidence must be apparent *before* it is destroyed." *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011).

The evidence is clear Plaintiff was given the fingerprint card during the criminal trial and therefore the evidence was not destroyed at the time of Plaintiff's criminal trial. On March 2, 1982, the second day of Plaintiff's trial, Officer Patterson delivered the latent fingerprint card collected from the beer bottle to the prosecution. SMF ¶ 84; *see Harris*, 486 F.3d at 1014 (*Brady* obligation requires police officers to turn over potentially exculpatory evidence to the prosecution). Assistant State's Attorney Cohen then tendered the fingerprint card to Murphy. SMF ¶ 85. While Plaintiff may argue the criminal trial transcript reads, "Judge, I am not tendering it t (*sic.*) defense counsel…" ASA Cohen explained the transcript contains a typographical error and it should read "I am now tendering" the prints to defense counsel. *Id.*; SMF ¶ 86. Moreover, Murphy argued in a post-trial hearing that she was given the fingerprints in court, which she argued was improper timing. SMF ¶ 87. Clearly Murphy was given the fingerprints and to assert otherwise completely ignores the evidence and testimony. The fingerprints were not destroyed at the time of trial and therefore there was no violation of Plaintiff's Due Process rights. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)(defendant was not denied due process of law by failure of police to refrigerate victim's clothing and to perform tests on semen samples to preserve potentially useful evidence. None of this information was concealed from defendant at trial, and evidence was made available to defendant's expert who declined to perform any tests on samples.)

Plaintiff also cannot maintain a destruction of evidence claim based on the destruction of the beer bottle as there was nothing apparently exculpatory about the bottle before it was destroyed and the bottle was not destroyed in bad faith. Evidence Technician Melko, who is not a defendant, testified that on January 21, 1980 he and Evidence Technician Rajewski dusted the beer bottle for fingerprints.

21

SMF ¶ 31. On January 22, 1980, the fingerprints were found to be not suitable for comparison. SMF ¶ 31. Melko testified at that time he and another person disposed of the beer bottle. SMF ¶ 32. Melko did not identify who the other person was that disposed of the beer bottle. SMF ¶ 32. There is no evidence Rajewski was involved in disposing of the beer bottle with Melko. SMF ¶ 32.

Plaintiff's police procedures expert testified that in 1980 the only exculpatory evidence that available from a beer bottle, such as the one that Rajewski and Melko collected, was the type of bottle it was and any fingerprints on the bottle. SMF ¶ 33. Plaintiff's DNA expert agrees that in 1980, DNA testing was not available and could not have been used on the beer bottle at the time it was destroyed. SMF ¶ 33. In satisfaction of their duties under the Fourteenth Amendment, Rajewski and Melko listed the type of beer bottle in their report and Defendants produced the fingerprints from the bottle. Defendants disclosed all of the potentially exculpatory evidence to Plaintiff and his counsel. *Bolden*, 293 F. Supp.3d at 778 *citing Armstrong*, 786 F.3d at 552.

Furthermore, Plaintiff cannot maintain a claim for destruction of evidence because Plaintiff cannot prove the destruction was done in bad faith. Melko admitted he and another person destroyed the beer bottle on the day the fingerprints came back as not suitable for comparison. SMF ¶ 32. Having preserved the fingerprints and documented the type of bottle collected, all potentially exculpatory evidence was disclosed. Destroying the bottle before Plaintiff was arrested cannot be characterized as "pursuing plaintiff through any means necessary." Plaintiff not prove who destroyed the bottle and he cannot prove the bottle was destroyed in bad faith. Based on the foregoing, Plaintiff cannot maintain his claim under Count III and this claim should be summarily dismissed.

## V. Defendants Bedran, Pawlowski, Rajewski, and Riley Should Be Dismissed.

Based on the foregoing, Defendants Bedran, Pawlowski, Rajewski, and Riley should be summarily dismissed as Defendants. Taking each in turn, it is clear these four Defendants were not personally involved in any alleged deprivation of Plaintiff's constitutional rights.

Bedran was only involved in the investigation on January 20 and 21, 1980. SMF ¶¶ 16,19. He did not encounter Plaintiff and he did not have a role in arresting, charging, or prosecuting Plaintiff. He did not testify at Plaintiff's criminal trial. As discussed, he spoke to LeGace and brought him in to take a polygraph test. SMF ¶¶ 18, 19. The results were erratic and he was given the option to ask LeGace to be re-examined at a later date. SMF ¶ 20. However, two days later, Plaintiff confessed to the crime. SMF ¶¶ 53, 54. Bedran did not violate Plaintiff's constitutional rights for all the reasons previously discussed. Moreover, there is no evidence Bedran participated in any conspiracy to deprive Plaintiff of his constitutional right. As such, Bedran should be summarily dismissed as a Defendant.

Riley should also be dismissed because there is no evidence he had any role in the arrest, charging, or prosecuting Plaintiff. Plaintiff testified he only briefly encountered Riley at the Ninth District and Riley calmed him down and gave him a cigarette. SMF ¶ 45. Riley did not draft any police report that contained alleged exculpatory evidence, nor is there any evidence Riley had any role in the Trunko homicide investigation or the investigation into Plaintiff's role in that homicide. SMF ¶ 44. Similarly, there is no evidence Riley was a co-conspirator in the alleged conspiracy to deprive Plaintiff of his constitutional rights. Riley should be dismissed as a Defendant in this matter.

Pawlowski also had no involvement in the alleged conspiracy to deprive Plaintiff of his constitutional rights and did not investigate Plaintiff or Trunko's murder. Pawlowski was dispatched to 5036 S. Hermitage for a report of a knife found in the front yard. SMF ¶ 24. Pawlowski saw the knife, did not touch it, and he or someone else contacted evidence technicians to retrieve the knife. SMF ¶ 24. Plaintiff has not established any evidence that it was Pawlowski who identified the knife as being involved in Trunko's murder. Indeed, Pawlowski testified someone from the district would have given him the Records Division ("RD") number to put on his report. SMF ¶ 25. Plaintiff cannot withstand this Motion for Summary Judgment by pointing to speculation and conjecture that it was Pawlowski who assigned the Trunko homicide investigation RD number to the recovery of this knife.

23

*Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)("Because plaintiff's allegations are nothing more than bald assertions without any evidentiary support, we hold that they are insufficient to establish that defendants conspired to deprive him of his constitutional rights.") After Pawlowski viewed the knife and drafted his police report, he had no further involvement in the Trunko homicide investigation and did not have any role in arresting or prosecuting Plaintiff for the murder. SMF ¶ 26. Pawlowski did not deprive Plaintiff of any constitutional or state law rights.

Lastly, Rajewski should be dismissed as a Defendant. As with Pawlowski, Rajewski photographed and collected the blood-stained knife with Melko on January 21, 1980 two blocks away from Trunko's homicide. SMF ¶ ¶ 27, 28. Rajewski was assigned to collect evidence related to the homicide investigation on January 21, 1980 and therefore there is no evidence Rajewski made the decision to associate the physical evidence collected with the RD number associated with Trunko's homicide. *Id.* Once at the crime lab, Rajewski and Melko dusted the knife and bottle for fingerprints. SMF ¶ ¶ 29, 31. There were no fingerprints found on the knife and the partial fingerprints on the bottle were submitted to the Bureau of Identification section for comparison. *Id.* As discussed, that was the extent of Rajewski's involvement. There is no evidence Rajewski disposed of the beer bottle. SMF ¶ 32. Rajewski did not take any action that deprived Plaintiff of his constitutional rights, nor is there any evidence Rajewski was involved in a conspiracy to deprive Plaintiff of his rights. Rajewski should be summarily dismissed as a Defendant.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted. Plaintiff's claims are barred by the statute of limitations. In the event this Court declines to follow the *Savory* opinion, Plaintiff's *Brady* claim should be summarily dismissed because Plaintiff knew or easily could have discovered the information that he now relies on in support of his *Brady* claim. Additionally, discovery of the allegedly suppressed evidence was not admissible, material, and would not have

changed the outcome of Plaintiff's criminal trial. The destruction of evidence claim should also be summarily dismissed because there is no evidence the fingerprints were destroyed and the beer bottle was not destroyed at the time there was any exculpatory value in the bottle. Defendants should also be granted qualified immunity on the *Brady* claims and the destruction of evidence claim. Lastly, Defendants Bedran, Riley, Pawlowski and Rajewski should be dismissed as defendants as there is no evidence of their personal involvement to deprive Plaintiff of his constitutional rights.

WHEREFORE, for all reasons set forth in Defendants' Memorandum in Support of Defendant's Motion for Summary Judgment, Defendants respectfully request this Motion be granted and this matter dismissed, and for all other relief deemed equitable and just.

Respectfully submitted,

BORKAN & SCAHILL, LTD.


By:   /s/ Emily E. Schnidt
          Emily E. Schnidt

Steven B. Borkan
Timothy P. Scahill
Misha Itchhaporia
Emily E. Schnidt
BORKAN & SCAHILL, LTD
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030