## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DANIEL ANDERSEN, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) No. 16 C 1963 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| THE CITY OF CHICAGO, *et al.,* | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Andersen was convicted of the murder and attempted rape of Cathy Trunko and spent over twenty-five years in prison. In 2015, Andersen's conviction was reversed, and he received a Certificate of Innocence. Andersen proceeded to sue the City of Chicago and various members of Chicago law enforcement involved in the case. (Dkt. 1). Andersen alleges violations of his constitutional rights, pursuant to 42. U.S.C. § 1983, and several state-law claims.

The Court assumes familiarity with the facts of this case, as the Court recently provided a detailed background in *Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 6327226 (N.D. Ill. Nov. 26, 2019). In summary, in January 1980, Cathy Trunko died after being stabbed. A few days after her death, Chicago Police recovered a knife near the scene that they believed to be the murder weapon. In the week following Trunko's death, Andersen was arrested on a disorderly conduct charge and was questioned about Trunko. Andersen eventually confessed to killing Trunko—a

confession that he says was coerced. Andersen proceeded to a jury trial, where he was convicted of the murder and attempted rape of Trunko. Andersen remained in custody from the time of his arrest in 1980 through trial, and up until his release from prison on April 24, 2007. In August 2015, Andersen's conviction was reversed, and in December 2015, he was granted a Certificate of Innocence by the Circuit Court of Cook County.

Defendants have moved to exclude the proposed testimony of Saul Kassin, an expert in the field of false confessions, who has opined on the reasons Andersen was induced to falsely confess. (Dkt. 391). For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Trial judges act as gatekeepers to screen expert evidence for relevance and reliability. *Daubert*, 509 U.S. at 589; *see also C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following conditions are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions. . . , it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). In evaluating the expert's proposed testimony, the Court should "scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted).

The Court utilizes a three-part analysis when applying the *Daubert* framework to proposed Rule 702 evidence. The Court determines (1) "whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). The expert's proponent bears the burden of demonstrating that the testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## DISCUSSION

Dr. Kassin's opinion begins by providing a general background on the field of false confessions. He proceeds, assuming that Andersen is innocent, to explain certain factors that likely caused Andersen to confess. Defendants move to bar Dr. Kassin's opinions on the grounds that he does not have relevant expertise, his methodologies are unreliable, his opinions do not fit the issues of this case, his testimony would not be helpful to a jury, and/or his opinions invade the province of the jury. The Court held a hearing on Defendants' motion on December 10, 2019. (Dkt. 443).

## I.  Qualifications

Defendants do not challenge Dr. Kassin's qualifications as an expert in the field of false confessions. Dr. Kassin's CV reflects a distinguished educational background, honors and awards from professional psychology associations around the world, membership in multiple relevant organizations, and significant publications in the field of psychology generally and confessions specifically. (Dkt. 391-3). The Court finds him qualified to testify as an expert regarding false confessions. He will also be permitted to discuss the impact of confessions on juries, as that falls within the publications and experience in his CV. (*See* Dkt. 391-1 at 2 (noting that Dr. Kassin has studied the effects of confessions on judges and juries); Dkt. 443 at 24:13–24:19 (same)).

That being said, nothing in Dr. Kassin's background qualifies him to opine on areas of criminal investigation outside of false confessions, including, but not limited

to, police practices (outside of interrogations), appropriate evidence collection methods, and DNA results. Dr. Kassin may reference facts of the investigation as they pertain to risk factors for false confessions, however, he may not opine generally as to the appropriateness of the investigation or similar issues, particularly those addressed in the "Postscript" of his opinion. Further, in assessing the risk that the confession may have been false, Dr. Kassin may point to the fact that information about the knife, which Andersen referenced in his confession, could have come from the police. He may not, however, testify about whether the knife was the murder weapon. Although there is factual support for the premise that the knife may not be the murder weapon, that support comes from DNA testing. Dr. Kassin is not qualified to discuss or opine on this testing as he is not a DNA expert. *See, e.g., Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 2436316, at *15 (N.D. Ill. June 5, 2017) (noting that, although there was factual support for an opinion that a victim's death was accidental, false-confessions expert was not permitted to opine on the subject because it was not within his expertise).

## II. Reliability & Application of Methodology

Defendants challenge the reliability of Dr. Kassin's methodology and opinions. As the Seventh Circuit has acknowledged, "social scientists frequently testify as experts, and their opinions are an integral part of many cases." *United States v. Mamah*, 332 F.3d 475, 477 (7th Cir. 2003) (internal quotation marks omitted). That false confessions cannot be calculated with the scientific certainty available in hard sciences does not mean that the study is unreliable. *See, e.g., Kluppelberg v. Burge,*

No. 13 C 3963, 2016 WL 6821138, at *4 (N.D. Ill. Sept. 16, 2016) ("Defendants' specific arguments—that since Ofshe did not include non-coerced confessions in his study he cannot opine on the rate of coerced confessions or that there is a causal link between certain police tactics and false confessions—merely identify limitations of Ofshe's methodology, not that it is unreliable."). Dr. Kassin and others are still able to, and do, study confessions known to be false and extrapolate data from them. Dr. Kassin's studies in this area have been published in peer-reviewed, scientific articles. (Dkt. 391-1 at 2). He has also authored a white paper on the subject published by the American Psychology-Law Society, reflecting the acceptance of his work in his academic community. (Dkt. 391-1 at 2). This Court finds Dr. Kassin's methods to be reliable, as have other courts in this district with regard to false-confession testimony. *See, e.g., Harris*, No. 14 C 4391, 2017 WL 2436316, at *9 (determining that the expert's testimony was based "on a sound, accepted, and reliable methodology"); *Caine v. Burge*, No. 11 C 8996, 2013 WL 1966381, at *3 (N.D. Ill. May 10, 2013) (determining that the expert had shown that "the field of police interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702"). Further, Dr. Kassin has appropriately bridged the science surrounding false confessions to the facts of Andersen's case, first laying out risk factors and then pointing to such risk factors present in the facts here. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered. . . .").

Defendants will be permitted to point out the limits of false-confessions research upon cross-examination and to argue that the same risk factors that may indicate a false confession could also apply to a true confession.[1]  They will also be free to establish that some police interrogation techniques are lawful, even if they may be risk factors for producing false confessions.

The Court's opinion differs as to certain materials in Dr. Kassin's report.  Dr. Kassin will not be permitted to assume or testify that Andersen's confession in this case was, in fact, false—in other words, that Andersen is actually innocent.  As Dr. Kassin has admitted, his methods do not allow him to reliably state whether a confessions is true or false, only that there is a *risk* of false confession.  Whether a confession is false would have to be established by exonerating evidence, which is disputed here and is not within Dr. Kassin's expertise.  (*See, e.g.,* Dkt. 443 at 128:23–129:4).  Further, whether Andersen is innocent is a dispute at the heart of this case and is one that must be left to the jury.  *See, e.g., Harris*, No. 14 C 4391, 2017 WL 2436316, at *16 (noting that whether a confession was false, even where a Certificate of Innocence was obtained, was a question for the jury); *Caine*, No. 11 C 8996, 2013

---

[1] In response to any such cross-examination, Dr. Kassin will be permitted to discuss the concept of diagnosticity, which he discussed during the hearing.  Defendants argue that the concept was undisclosed in his written opinion and should be barred.  They fail to provide any legal support for this argument.  *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (noting that courts are not obligated "to research and construct the legal arguments open to parties, especially when they are represented by counsel" (internal quotation marks omitted)); *see also Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").  Further, Dr. Kassin was not expected to anticipate rebuttal arguments and address them in his report.  *See Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) (noting that the purpose of expert "reports is not to replicate every word that the expert might say on the stand").  Finally, Dr. Kassin addressed the concept when Defendants deposed him.  (*See* Dkt. 483 at 2–3 (describing such testimony)).  Defendants have not pointed to any specific prejudice, resultant delay, or bad faith relating to this post-report disclosure.  *Cf. Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417–418 (7th Cir. 2019) (outlining when late evidence should be inadmissible).

WL 1966381, at *3 ("However, Dr. Leo will not be allowed to testify as to his opinion that Caine's and Patterson's confession statements were false. In particular, he will not be allowed to testify as to his comparison of the witnesses' confessions and the physical evidence of the crime. That is decidedly a jury question and allowing Dr. Leo to opine on that subject would invade the province of the jury."). Dr. Kassin appears to agree and stated in the hearing that to reach his opinion, he did not need to assume innocence. (*See* Dkt. 443 at 98 ("Q: Are you concluding that Daniel Andersen's confession was false in this case? A: No, I'm -- no, what I'm concluding is that, look, ultimately in a trial the jury has to figure out in cases where there is dispute as to what actually happened, what was said, what was done, it's the jury's job to figure out what to believe or not."); *id.* at 138:14–139:25).

Additionally, Dr. Kassin will not be permitted to testify as to any of the information in the "Postscript" of his report. There are multiple reasons for this, the most important being that he made clear both in his deposition and at the hearing that these are not opinions but are rather musings. (Dkt. 391-2 at 362:1–362:23; Dkt. 443 at 202:23–204:11). As such, the Court cannot conclude that these were reached based on the sound methods used in reaching Dr. Kassin's formal opinions. Further, they reach subject matter that Dr. Kassin is not an expert in. For example, the Postscript discusses whether the officers had already presumed Andersen's guilt before questioning him, notes the potential improper recordkeeping by the police, and generally opines on whether some evidence in the case is consistent with other

evidence. (Dkt. 391-1 at 34–36). These are police-practices matters or questions for the jury, they do not have to do with the field of false confessions.

Finally, the Postscript contains some discussion of a later confession Andersen may have given in sex-offender therapy. Again, Dr. Kassin stated that his discussion of this subject was not an opinion. Further, he notes that "there is not research on the specific question" of later confessions in such a context, and states that he is "not in a position to determine the accuracy" of some of the evidence surrounding the later confession. (Dkt. 391-1 at 37). Because Dr. Kassin stated that this was not part of his formal opinion and because it rests on far shakier ground than Dr. Kassin's analysis in other parts of his report, Dr. Kassin will not be permitted to opine on Andersen's later confession made in sex-offender therapy.

## III.    Relevance

Dr. Kassin will be permitted to testify as a general matter that false confessions happen and explain the risk factors that can lead to a false confession. His testimony will assist the jury in "understand[ing] the evidence" or "determin[ing] a fact in issue." *Myers*, 629 F.3d at 644 (internal quotation marks omitted). As many Courts have observed, such information may not be within the understanding of the average juror—the average person may find it incredible that someone would confess to a murder they did not commit. *See United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) ("The expert, in short, would have given them a reason to reject the common sense evaluation of the facts that they would otherwise be entitled to use."); *Harris*, No. 14 C 4391, 2017 WL 2436316, at *16 ("In summary, Dr. Leo's expert

testimony regarding false confessions will be helpful to explain why false confessions happen and how to recognize false confessions, thus allowing the jury to use this framework to apply to the facts of this case."); *Caine*, No. 11 C 8996, 2013 WL 1966381, at *2 ("Although jurors' common sense may suggest to them that someone would never falsely confess to committing murder, Dr. Leo's testimony will educate jurors that false confessions sometimes do occur. As a result, the Court believes it will be helpful for the jury to hear expert testimony on this issue."). Testimony that false confessions do occur and why will aid the jurors in this case.

For the same reasons, Dr. Kassin will also be permitted to apply the known risk factors to Andersen's case as he did in his report, such as the length of the interrogation, sleep-deprivation, physical maltreatment of Andersen, the interrogation tactics used, and more. He may rely on disputed facts to do so, as long as there is evidence to support such facts. *See Hall*, 93 F.3d at 1345–46 ("It is enough if the expert makes clear what his opinion is, based on the different possible factual scenarios that might have taken place."); *Harris*, No. 14 C 4391, 2017 WL 2436316, at *12 ("It is well-settled that experts can base their opinions on disputed facts because the 'soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.'" (quoting *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 360 (7th Cir. 2015))); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *6 (N.D. Ill. May 2, 2016) ("Moreover, although an expert cannot rely on facts that are clearly contradicted by undisputed evidence,

an expert may rely on his client's version of the facts when forming his opinions."). For example, he could point to Andersen's level of intoxication, as there are facts to support the idea that he was intoxicated when taken into custody. (*See* Dkt. 410 at 11–12 (discussing evidence of intoxication)). It will be for the jury to determine whether to accept these underlying facts, and by extension, Dr. Kassin's opinion.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Bar Dr. Kassin is granted in part and denied in part. His testimony is generally admissible but will be limited consistent with this Opinion.

Virginia M. Kendall
United States District Judge

Date: April 13, 2020