# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DANIEL ANDERSEN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No.  16 C 1963 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| THE CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Andersen was convicted of the murder and attempted rape of Cathy Trunko and spent over twenty-five years in prison. In 2015, Andersen's conviction was reversed, and he received a Certificate of Innocence. Andersen proceeded to sue the City of Chicago and various members of Chicago law enforcement involved in the case. (Dkt. 1). Andersen alleges violations of his constitutional rights, pursuant to 42. U.S.C. § 1983, and several state-law claims.

The Court assumes familiarity with the facts of this case, as the Court recently provided a detailed background in *Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 6327226 (N.D. Ill. Nov. 26, 2019).  In summary, in January 1980, Trunko died after being stabbed.  A few days after her death, Chicago Police recovered a knife near the scene that they believed to be the murder weapon.  In the week following Trunko's death, Andersen was arrested on a disorderly conduct charge and was questioned about Trunko.  Andersen eventually confessed to killing Trunko—a confession that

he says was coerced. Andersen proceeded to a jury trial, where he was convicted of the murder and attempted rape of Trunko. Andersen remained in custody from the time of his arrest in 1980 through trial, and up until his release from prison in April 2007. In August 2015, Andersen's conviction was reversed, and in December 2015, he was granted a Certificate of Innocence by the Circuit Court of Cook County.

Defendants have moved to bar the testimony of Richard Brzeczek, one of Andersen's police-practices experts. (Dkt. 389). The Court held a hearing on the motion on January 9, 2020. (Dkt. 464). For the following reasons, the motion is granted.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Trial judges act as gatekeepers to screen expert evidence for relevance and reliability. *Daubert*, 509 U.S. at 589; *see also C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following conditions are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions. . . , it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). In evaluating the expert's proposed testimony, the Court should "scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted).

The Court utilizes a three-part analysis when applying the *Daubert* framework to proposed Rule 702 evidence. The Court determines (1) "whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). The expert's proponent bears the burden of demonstrating that the testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *See Gopalratnam*, 877 F.3d at 782; *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## DISCUSSION

Andersen retained Brzeczek to opine on the propriety of certain actions taken by law enforcement in Andersen's criminal case. Brzeczek opines that certain

documentation failures "raise serious concern about the integrity of the investigation and the reporting of investigative activity by the detectives." (Dkt. 389-1 at 4). He points to several failures related to the investigation of a possible alternative suspect, Robert LaGace. Brzeczek notes that the detectives failed to report why they regarded LaGace as a suspect, why they took him for a polygraph, and whether they conducted any additional investigation into him. (*Id*. at 4–7).

The Court notes serious issues with the reliability and relevance of Brzeczek's opinions, described herein, and excludes his testimony on these bases.

Brzeczek spent approximately two decades as a member of the Chicago Police Department ("CPD"). His positions ranged from Police Officer, to Sergeant, all the way up to Superintendent. (Dkt. 389-3 at 1). He left CPD in 1983 and worked as a lawyer through 2016. (*Id*.). Since leaving CPD, he has also been the president of a consulting firm providing services in the field of "police administration and procedures, investigating police misconduct, police leadership, and *Code of Silence* issues." (*Id*. at 1–2). He has also lectured at a number of institutions on similar topics. (*Id*. at 3).

Defendants demand that Brzeczek have experience documenting taking a suspect for a polygraph. That is too narrow—his opinions go generally to documenting an investigation.[1] Defendants also point to the fact that Brzeczek

---

[1] Defendants' preoccupation with the polygraph aspect of Brzeczek's testimony throughout their motion is misguided. As this Court described in its summary judgment opinion and in its opinion regarding the admissibility of Andersen's other police practices expert, Dennis Waller (Dkt. 650 at 17), the detectives' failure to record and report the source of information about LaGace and the fact that LaGace was polygraphed could support a *Brady* claim. *Andersen*, No. 16 C 1963, 2019 WL 6327226, at *7–9. As such, testimony about this documentation failure could be relevant to Andersen's *Brady* claim.

himself was never a detective. In response, Andersen states that, while at CPD, Brzeczek was an author of the Criminal Investigation Division Standard Operating Procedures Manual, which "contained multiple chapters specifically directed toward detectives' conduct and behavior in connection with their duties and investigative responsibilities." (Dkt. 414-1 at 126:3–126:9). He also, at one point in his career, supervised dozens of detectives. (*Id.* at 51:7–51:13). The Court concludes that his experience with protocols for detectives and supervision of detectives are enough to qualify him to opine on appropriate documentation standards for detectives. *See Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) ("This court has recognized that while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." (internal quotation marks omitted)).

Qualification, however, is only one step of the inquiry. The next part of the inquiry is whether Brzeczek's methodology is reliable. In his report, Brzeczek reviews the facts of the underlying criminal case and then describes the concerns he has with how the detectives proceeded. In theory, such a method can be reliable. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (noting that it was appropriate for police-practices expert to "describe[e] sound professional standards and identify[] departures from them" (internal quotation marks omitted)). Here, however, it is not.

Brzeczek stated in his report that his opinions were based on his "experience and knowledge in the field of police practices and [his] specific knowledge of the CPD during the relevant time period." (Dkt. 389-1 at 6). But an expert who is relying on experience, such as Brzeczek, must connect his experience to the opinions he offers. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered. . . ."); *Potts v. Manos*, No. 11 C 3952, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under *Daubert* and the Federal Rules of Evidence."). Brzeczek, however, has failed to explain how his experience "leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Alternatively, Brzeczek could have cited to some materials that would support his conclusions. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011) (noting that publication of a theory and its acceptance within the relevant community are factors to be considered under *Daubert*.). But he does not cite a single source in his report. And although he pointed to some corroborative sources in his deposition and hearing testimony (*see, e.g.*, Dkt. 389-2 at 203:23–206:22; Dkt. 414-4 at 22:23–26:19; Dkt. 464 at 30:2–31:16), these were CPD-specific and very high-level, he described them in only the most general terms, and he did not

elaborate on whether they constituted "sound professional standards."[2] *Jimenez*, 732 F.3d at 721 (internal quotation marks omitted). Further, in his deposition, he disclaimed reviewing any authoritative text or CPD regulations in forming his opinions. (Dkt. 389-2 at 89:17–90:17).

Brzeczek essentially asks this Court, and any factfinder, to take him at his word that his opinions are correct, without supporting them. This is not a reliable methodology. *See Manpower*, 732 F.3d at 806 (noting that "it is the opinion connected to existing data only by the *ipse dixit* of the expert that is properly excluded under Rule 702" (internal quotation marks and citations omitted)); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."). Instead, it is more akin to accepting Brzeczek's "subjective beliefs" on the matter, which is not permissible. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010); *see also United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (noting that, regardless of whether a witness is an expert, they cannot tell the jury what conclusion to reach just "because I said so").

Finally, there is relevance. Expert testimony in police practices can be helpful to the jury in many situations. *See United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("For example, if it's standard practice across the country to train officers to handle a given situation in a particular way, expert testimony about that training

---

[2] At the hearing, Andersen's counsel attempted to correct this, asking Brzeczek whether CPD's policies were consistent with nationally accepted standards. (Dkt. 464 at 145:21–146:3). While Brzeczek answered in the affirmative, neither counsel nor Brzeczek provided any support for this. Nor is it clear that Brzeczek is qualified to testify to national standards—his expertise is CPD-centric.

might aid a jury tasked with evaluating the conduct of an officer in that specific situation."); *Jimenez*, 732 F.3d at 721 ("In constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful."). That being said, "[e]vidence of purely localized police procedure is less likely to be helpful than nationally or widely used policy." *Brown*, 871 F.3d at 538.

Even if Brzeczek's methodology were reliable, his testimony does not meet the relevance requirement. Brzeczek testified only to local CPD practices. He did not discuss nationally or even regionally accepted standards, nor did he compare CPD's standards to more broadly accepted standards. (*See, e.g.*, Dkt. 464 at 69:1–69:23 (Brzeczek noting that his testimony was confined to the practices of CPD)). Without more, the Court does not know whether the standards Brzeczek testified to are "sound professional standards," making their relevance far more questionable. *Jimenez*, 732 F.3d at 721. It is not clear how it would aid the jury to know that the detectives here may not have followed CPD protocol if the jury is not told how that protocol compared with generally accepted police practices. *See, e.g., Wells v. City of Chicago*, No. 09 C 1198, 2012 WL 116040, at *12 (N.D. Ill. Jan. 16, 2012) ("Waller is not using his expertise or knowledge to assess the adequacy of the policy adopted by the City or compare it with standard practices. Rather, he has done nothing more than cite evidence in the record that he contends reflects the policy was not followed. The jury is equally qualified to make this determination, and Waller's opinion would provide them with no meaningful assistance.").

The Court additionally notes that Brzeczek's opinions are cumulative to those of Dennis Waller, Andersen's other police practices expert. The Court has ruled that Waller will be permitted to opine on documentation failures, including those related to LaGace. (*See* Dkt. 650). Unlike Brzeczek, Waller supports his conclusions with published and nationally accepted standards for police writing. (*Id.*). That Brzeczek's testimony would be cumulative is an additional basis for excluding it. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of. . . needlessly presenting cumulative evidence."). The Court is additionally concerned that a jury would give Brzeczek's opinions more weight than they are due because he was the Superintendent at the time of Trunko's death and would have an aura of authority. *See Brown*, 871 F.3d at 539 ("And as the district judge concluded, the admission of Farrell's testimony may have induced the jurors to defer to his conclusion rather than drawing their own.").

For the foregoing reasons, Defendants' motion to exclude Brzeczek's testimony is granted. (Dkt. 389).

_____
Virginia M. Kendall
United States District Judge

Date: April 14, 2020