IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL ANDERSEN, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) No. 16 C 1963 ) ) Judge Virginia M. Kendall |
| THE CITY OF CHICAGO, *et al.*, | ) ) |
| *Defendants.* | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Andersen sued the City of Chicago and various members of Chicago law enforcement for violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and several state-law claims. (Dkt. 1). Andersen moved to exclude the testimony of Dr. Dan E. Krane, Defendants' DNA expert. (Dkt. 392). By memorandum opinion dated June 16, 2020, this Court granted Andersen's motion to exclude Dr. Krane's testimony finding that his underlying methodology did not meet the requirements for reliability under Rule 702. (Dkt. 656 at 9). The Court invited Defendants to file supplemental briefing regarding whether Dr. Krane may properly testify on a limited basis as to the uncertainty in interpreting partial DNA profiles with an unknown number of contributors. (Dkt. 656 at 9–10). Defendants filed this combined motion both moving for reconsideration of the exclusion of Dr. Krane's testimony and arguing that he may testify as to the general topic of uncertainty. (Dkt. 660). Defendants' motion is granted in part and denied in part.

**DISCUSSION**

I.  **Motion for Reconsideration**

   A.  *Legal Standard*

Although Defendants do not specify which Rule supports this motion for reconsideration, the Court assumes they seek relief in a hybrid way under Federal Rule of Civil Procedure 54(b) and also because the Court invited supplemental briefing on the issue. Rule 54(b) affords courts the inherent power to reconsider interlocutory orders at any time before final judgment is entered. Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). A motion for reconsideration under Rule 54(b) may be granted where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.1d 1185, 1191 (7th Cir. 1990); *see also, e.g., Caine v. Burge*, 897 F. Supp. 2d 714, 716–17 (N.D. Ill. 2012).

Motions to reconsider should be granted only in rare circumstances. *See Bank of Waunakee*, 906 F.2d at 1191. A party moving for reconsideration bears a heavy burden. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Motions for reconsideration may not be used to relitigate arguments the Court previously rejected. *See id.*; *see also, e.g., Caine*, 897 F. Supp.

2d at 717. Finally, it is well-settled that motions for reconsideration are not the proper vehicles for advancing arguments or theories that could and should have been made before the Court entered its order or to present evidence that was available earlier. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007); *see also, e.g., Caine*, 897 F. Supp. 2d at 717. The Court recognizes that it invited supplemental briefing on the issue and therefore has considered that briefing.

### B. *Dr. Krane's Opinion*

Defendants' primary argument is that the Court misunderstood Dr. Krane's methodology by holding he "applied a 'blanket' approach which categorically declined to interpret partial profiles." (Dkt. 660 at 5). Defendants point to various instances in which Dr. Krane testified "he was **not** applying a blanket approach which forbids the interpretation of partial profiles." (Dkt. 660 at 6) (emphasis in original).

Defendants are correct that Dr. Krane does not adopt a blanket approach to all partial profiles. (Dkt. 660 at 6). According to Dr. Krane, partial profiles in which there is little to no question as to the number of contributors—such as a sample extracted from the inside of a tooth or the inside of a used condom—do not automatically warrant an "inconclusive" result. (Dkt. 444 at 88:18–89:4; 128:17–129:11). This is not the opinion or methodology at issue in this case. The partial DNA profiles about which Dr. Krane was retained to opine are those with evidence of stochastic effects and an unknown number of contributors. (Dkt. 394-2 at 6–12). It is Dr. Krane's methodology with regard to these types of partial DNA profiles which is relevant to the matter at hand.

Defendants consistently and repeatedly characterize "[t]he crux of Krane's opinion is that DNA samples with evidence of stochastic effects should not be used to exclude or include anyone as a contributor, especially where the DNA is also low level DNA." (Dkt. 408 at 7). *See also* (Dkt. 408 at 7–8 "Krane stated he is consistent in his opinions that if a sample appears to have an unknown number of contributors and dropout may have occurred, he concludes the comparison results should be inconclusive because there is no reliable statistical weight that can be attribute to the failure to exclude someone as a contributor."); (Dkt 408 at 18 "Krane's opinions across the board with regard to the knife and the fingernail clippings were that because a scientist cannot reliably opine to the number of contributors, one cannot reliably include or exclude anyone and attach a meaningful statistical weight to such a conclusion."); (Dkt. 394-1 at 205:14–206:23). Defendant's characterizations align with Krane's own statements on the record that "there is no generally accepted means of attaching a reliable statistical weight to a mixed DNA sample with an unknown number of contributors where allelic drop-out may have occurred." (Dkt. 444 at 14:1–4); *see also* (Dkt. 394-1 at 135:23–136:2). The Court's understanding of Dr. Krane's methodology—that partial profiles with evidence of stochastic effects should be deemed inconclusive as a matter of course—is consistent. (Dkt. 656 at 5). Defendants have not offered compelling evidence that the decision excluding Dr. Krane's testimony relies on a misunderstanding of his opinions or methodology.

Nor do Defendants submit evidence that Dr. Krane's methodology is generally accepted within his field. The sources proffered by Defendants merely affirm that

partial profiles with stochastic effects *may* appropriately yield an inconclusive result, not that they *must*. *See, e.g.,* (Dkt. 660-14 at 3 "[John Butler states] an inconclusive result may be reported with some evidentiary samples that produce partial or complex DNA profiles due to damaged DNA[], too little DNA[], or complex mixtures"); (Dkt. 660-9 at 215, 218–19 "Some evidentiary profiles are overly complex in nature due to the number of contributors to the sample . . . In these situations, determinations of inclusion or exclusion for a given individual is ambiguous, and an inconclusive statement is appropriate . . ."); (Dkt. 660-10 at 18–19 "If samples under comparison contain a partial profile, for example as a result of allele drop-out, stochastic effects, or an incomplete profile from locus drop-out due to inhibition or degradation, or is a complex mixture the DNA profile may or may not be interpretable and may be considered inconclusive."). Other than Dr. Krane himself, the Court is unaware of any expert or authority in the field of DNA interpretation which automatically deems partial DNA profiles with evidence of stochastic effects "inconclusive."

Defendants take issue with this Court's determination in the June 16, 2020 Order that Dr. Krane declined to interpret the DNA profiles at issue and argue that he "painstakingly went through each of the relevant profiles in this case, identified the specific deficits of each one consistent with the cautionary factors outlined in the governing literature, and concluded and explained why an inconclusive was the appropriate interpretation for each one." (Dkt. 660 at 10). In the context of Dr. Krane's methodology, this is a distinction without a difference. Unlike the rest of the

forensic DNA testing field, Dr. Krane categorically deems partial DNA profiles with evidence of stochastic effects "inconclusive." This amounts to a refusal to interpret such samples because the outcome is a foregone conclusion.

Defendants fail to convincingly argue that the Court misunderstood Dr. Krane's methodology or opinions or identify an error sufficient to justify reconsideration. The exclusion of Dr. Krane's testimony stands.

## II. Testimony on the General Topic of Uncertainty

Consistent with this opinion and the holdings of the July 16, 2020 Order, Dr. Krane may offer limited testimony as to the general topic of uncertainty and risk in interpreting partial DNA profiles with an unknown number of contributors. Defendants presented sources which suggest that, in the field of forensic DNA analysis, caution in interpretation of partial profiles applies to inclusions and exclusions alike. *See* (Dkt. 660-7 at 4–5 "[C]omplex mixtures are challenging to interpret . . . When there is a high degree of interpretation uncertainty from an evidentiary sample, it makes little sense to try and draw conclusions (either inclusion *or* exclusion of reference samples)—and expect those conclusions to be reliable."); *see also* (Dkt. 660-13 at 38–39); (Dkt. 660-8 at 4); (Dkt. 660 at 4). It bears repeating that, in testifying in a limited capacity, Dr. Krane is prohibited from offering the opinions excluded in the June 16, 2020 Order. To illustrate, of the example questions Defendants offer, only two are appropriate. Defendants might ask Dr. Krane "[w]hy must caution be applied when interpreting complex and/or low level DNA samples?" and "[w]hat are the different ways in which caution may be applied by a DNA

analyst?" (Dkt. 668 at 8). Defendants may not, however, ask Dr. Krane to "[e]xplain [his] methodology when interpreting low level degraded DNA samples that yielded a partial DNA profile." (Dkt. 668 at 8). This latter question runs too great a risk of introducing the jury to inadmissible opinions prohibited by the June 16, 2020 Order and Rule 702.

## CONCLUSION

For the foregoing reasons, Defendants' motion to reconsider the exclusion of Dr. Krane's testimony is denied. Consistent with this Opinion and the June 16, 2020 Order, Dr. Krane may testify in a limited capacity on the general topic of uncertainty in interpreting partial DNA profiles with an unknown number of contributors.

Virginia M. Kendall
United States District Judge

Date: October 14, 2020